**Neville CARRINGTON, Plaintiff,**

v.

**RCA GLOBAL COMMUNICATIONS, INC., International Brotherhood of Teamsters, Local Union 111, Nicholas Bafitis, John Bacardi, Arthur Friedland, Christopher McLoughlin and John Kinney, Defendants.**

**Civ. No. 91–1030.**

United States District Court, D. New Jersey.

April 26, 1991.

Neil Unger, Jeffrey Zajac, Kendall Park, N.J., for Neville Carrington, plaintiff.

Beverly A. Williams, Harvey D. Rumeld, Epstein, Becker & Green, Newark, N.J., for RCA Global Communications, Inc., defendant.

Susan Davis, Thomas N. Ciantra, Cohen, Weiss & Simon, New York City, for Intern. Broth. of Teamsters, Local 111, defendant.

## OPINION

DEBEVOISE, District Judge.

This motion comes before the Court on defendants' motion to dismiss the complaint. For the following reasons, defendants' motion is granted in part and denied in part. Because I am dismissing all federal claims from this case, but certain state law claims shall remain, I am remanding this case to the state court from which it was removed.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff Neville Carrington originally filed this action in the Superior Court of New Jersey, Law Division, for Middlesex County, on January 28, 1991. In his complaint, the allegations of which are taken as true for purposes of the present motion, plaintiff alleges that prior to September 15, 1988, he was employed as a computer technician by defendant RCA Global Communications, Inc. ("RCA"). Complaint, Count I, ¶ 2. Plaintiff further alleges that defendant International Brotherhood of Teamsters, Local Union 111 ("IBT"), is the successor union of the American Communications Association, Local 10, which acted as the collective bargaining agent for certain employees of RCA, including plaintiff. *Id.*, ¶ 4. At all times relevant to the complaint, plaintiff alleges, a collective bargaining agreement was in effect between defendant RCA and defendant IBT. *Id.*, ¶ 15.

According to the complaint, on September 7, 1988, while plaintiff was working at an RCA facility in Piscataway, New Jersey, a fellow employee of RCA, without provocation, physically assaulted plaintiff. *Id.*, ¶ 9. Subsequently, and apparently in relation to this incident, on September 14, 1988 defendant Christopher McLaughlin, an agent of defendant IBT, informed plaintiff that he would be discharged from employment effective September 15, 1988. *Id.*, ¶ 12. The next day, plaintiff received a "notice of layoff" from defendant Nicholas Bafitis, manager of labor relations for defendant RCA, informing plaintiff that he was being discharged as of that day. *Id.*, ¶ 13.

Based on the foregoing allegations, plaintiff asserts three causes of action. First, plaintiff alleges that under the collective bargaining agreement between RCA and IBT, as well as under RCA's independent company policy (possibly as embodied in a personnel manual), RCA employees such as plaintiff could be discharged only for cause. *Id.*, ¶¶ 16–17, 21. Furthermore, plaintiff alleges, under the collective bargaining agreement RCA must give ten (10) days notice before discharging an employee, and the agreement also contained certain grievance and appeal procedures for discharged union members, of which plaintiff was never advised. *Id.*, ¶¶ 18, 20. Finally, plaintiff alleges that the collective bargaining agreement also includes certain implied covenants of good faith and fair dealing. *Id.*, ¶ 19. Therefore, plaintiff claims that his discharge was in violation of both the collective bargaining agreement and RCA company policy. *Id.*, ¶ 21. Plaintiff thus brings a cause of action against individual defendants Bafitis, John Bacardi and Arthur Friedland, each of whom is allegedly an agent or employee of RCA, for knowingly inducing RCA to breach the collective bargaining agreement and company policy by discharging plaintiff. *Id.*, ¶ 23.

Count II of the complaint states a claim for discrimination against defendant RCA as well as individual RCA employees Bafitis, Bacardi and Friedland. Plaintiff alleges that he is black, Complaint, Count II, ¶ 4, and that the defendants discriminated against him on the basis of race by discharging him, in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5–12a. *Id.*, ¶ 7.

Finally, Count III of the complaint also states a claim of discrimination, this time against defendant IBT and individual defendants Christopher McLaughlin and John Kinney, who are allegedly agents or employees of the union. Plaintiff alleges that these defendants discriminated against him on the basis of race by failing to advocate plaintiff's position with RCA management, failing to advise plaintiff of his grievance and appeal rights under the collective bargaining agreement, and otherwise taking a passive role in connection with plaintiff's discharge, again in violation of the NJLAD, N.J.S.A. 10:5–12b. Complaint, Count III, ¶¶ 3, 5.

Defendants RCA, Bafitis, Bacardi and Friedland originally filed a notice of removal on March 18, 1991, allegedly within one month of receipt of plaintiff's complaint.[1]

---

1. Apparently defendants' notice of removal was defective for failing to be joined by the union defendants; this defect was remedied in a later amended notice of removal. The union defen-

Defendants argued that this case is within this Court's subject matter jurisdiction, and therefore removable, because plaintiff's claim that he was wrongfully discharged in violation of the collective bargaining agreement states a claim which is preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and therefore falls within this Court's "arising under" jurisdiction under 28 U.S.C. § 1331.

The case having been removed, both the employer and union defendants have filed separate motions to dismiss, on the following grounds: (1) plaintiff's claim for wrongful discharge is a "hybrid" claim under the LMRA and is therefore governed by a six month statute of limitations; because plaintiff's complaint was filed over two years after he was discharged, defendants argue, the wrongful discharge claim is barred by the statute of limitations; (2) RCA and, apparently, the union, argue that the discrimination claims against them are also preempted under the LMRA and subject to a six month statute of limitations, and therefore should also be dismissed as time barred; (3) alternatively, RCA and the union argue that even if plaintiff's state law discrimination claims are not preempted by the LMRA, the applicable statute of limitations under the NJLAD is two years, and therefore plaintiff's claims are still time barred; and (4) all of the individual defendants argue that the complaint against them should be dismissed in any event because they have not been properly served.

## DISCUSSION

### I. JURISDICTION.

■ At the outset, I agree that this case is properly before the Court under federal "arising under" jurisdiction. As defendant RCA argues, and as plaintiff concedes, a claim for wrongful discharge based on the terms of a collective bargaining agreement, such as plaintiff asserts in Count I of his complaint, is completely preempted by the LMRA. *See Krashna v. Oliver Realty, Inc.,* 895 F.2d 111, 115 (3d Cir.1990).

dants also filed a "supplemental" notice of re-

■ Ordinarily, of course, under the well-pleaded complaint rule, where a plaintiff's complaint on its face states only state law causes of action, the fact that issues of federal law may be involved, as in the nature of a defense, will not suffice to create federal question jurisdiction. *See Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 10, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983); *Taylor v. Anderson,* 234 U.S. 74, 75–76, 34 S.Ct. 724, 725, 58 L.Ed. 1218 (1914); *see also Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 672, 70 S.Ct. 876, 879, 94 L.Ed. 1194 (1950). This is true even though federal law may preempt state law, for the issue of federal preemption is still only raised as a defense, and therefore cannot create federal question jurisdiction under the well-pleaded complaint rule. *Franchise Tax Board,* 463 U.S. at 25–27, 103 S.Ct. at 2854–55.

■ However, an exception to this application of the well-pleaded complaint rule "is that Congress may so completely preempt a particular area, that any civil complaint raising this select group of claims is necessarily federal in character. For 20 years, this Court has singled out claims pre-empted by § 301 of LMRA for such special treatment." *Metropolitan Life Insurance Co. v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). This is because "§ 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.' Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301." *Franchise Tax Board,* 463 U.S. at 23, 103 S.Ct. at 2853–54. Therefore, because the Third Circuit has held, and plaintiff concedes, that a claim for wrongful discharge such as plaintiff's is completely preempted by § 301 of the LMRA, *see Krashna v. Oliver Realty, Inc.,* 895 F.2d at 115, under the complete preemption doctrine plaintiff's claim is one "arising under" federal law and therefore within this Court's subject matter jurisdic-

moval.

tion. Even if plaintiff's other claims arise only under state law, they may still be heard under this Court's pendent jurisdiction.

## II. PLAINTIFF'S WRONGFUL DISCHARGE CLAIM.

Defendant RCA argues that plaintiff's wrongful discharge claim is a "hybrid" claim preempted by the LMRA, to which a six month statute of limitations applies. Because, RCA argues, plaintiff brought his claim over two years after his discharge, it should be dismissed as barred by the statute of limitations. Plaintiff concedes that his wrongful discharge claim is preempted by the LMRA, but argues (1) that his claim is not a "hybrid" claim, and therefore the six month statute of limitations does not apply, and (2) even if his claim is a "hybrid" claim, the complaint was timely filed.

Ordinarily, an employee who brings a claim, such as plaintiff's wrongful discharge claim, against an employer for breach of a collective bargaining agreement is first required to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement. *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 163, 103 S.Ct. 2281, 2289, 76 L.Ed.2d 476 (1983). However, an employee is not required to exhaust his remedies under the grievance procedures if the union breaches its duty of fair representation in connection with the grievance process (as, for example, where the union fails to process the employee's claim). *Id.* at 164, 103 S.Ct. at 2290. In such a case, the employee may bring a so-called "hybrid" action against both the employer, for breach of the collective bargaining agreement, and the union, for breach of the duty of fair representation. *Id.* For such a "hybrid" claim, the Supreme Court has held, the applicable statute of limitations is six months, as provided under § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). *Id.* at 169, 103 S.Ct. at 2293.

Plaintiff argues, however, that his wrongful discharge claim is not a "hybrid" claim because he does not actually assert a claim for breach of duty of fair representa-

tion against the union. This argument is without merit. Although plaintiff does not assert a claim for breach of duty of fair representation against the union, the allegations in his complaint are precisely that the union breached its duty to plaintiff by failing to advise him of his rights under the collective bargaining agreement. *See* Complaint, Count I, ¶ 20. As the Supreme Court has held, the two claims in a "hybrid" action are "inextricably interdependent." *DelCostello*, 462 U.S. at 164, 103 S.Ct. at 2291. Without a claim against the union, the employee's claim against the employer would be barred by the exhaustion requirement. *Findley v. Jones Motor Freight*, 639 F.2d 953, 957–58 (3d Cir.1981).

> "To prevail against either the company or the Union, ... [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union." ... The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both.

*DelCostello*, 462 U.S. at 165, 103 S.Ct. at 2291 (quoting *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 66–67, 101 S.Ct. 1559, 1566, 67 L.Ed.2d 732 (1981) (Stewart, J., concurring in the judgment)). *See also Chauffeurs, Teamsters & Helpers v. Terry*, 494 U.S. 558, ——, 110 S.Ct. 1339, 1344, 108 L.Ed.2d 519, 527 (1990). "The law is clear that regardless of who is named as a defendant, a hybrid claim is presented if an employee has a cause of action against both the employer and the union, where the two claims are inextricably linked, and where the case to be proved is the same against both." *McKee v. Transco Products, Inc.*, 874 F.2d 83, 86 (2d Cir.1989). Therefore, "even though plaintiff did not name the union as a defendant," in fact "a hybrid claim implicitly exists." *Cole v. Pathmark of Fairlawn*, 672 F.Supp. 796, 806 (D.N.J.1987). Consequently, plaintiff "cannot circumvent the six-month limitations period for hybrid actions by choosing to sue only [his] employer." *McKee*, 874 F.2d at 86. *See also Bailey v. Chesapeake*

*& Ohio Ry. Co.,* 852 F.2d 185, 187 (6th Cir.1988).

In the alternative, however, plaintiff argues that the wrongful discharge claim is not a "hybrid" claim because here the employer has repudiated its obligations under the collective bargaining agreement, citing *Garcia v. Eidal Int'l Corp.,* 808 F.2d 717 (10th Cir.1986), *cert. denied,* 484 U.S. 827, 108 S.Ct. 94, 98 L.Ed.2d 55 (1987). *See also Smith v. Pittsburgh Gage & Supply Co.,* 464 F.2d 870, 875 (3d Cir.1972). Once again, however, plaintiff's argument is misplaced. In *Garcia* the court held that the action against the employer differed from a typical "hybrid" action "[i]n one crucial respect," namely, that the employer "repudiated the grievance and arbitration process as part of its unilateral effort to evade an undesirable bargaining agreement." *Garcia,* 808 F.2d at 721. In such a case, proof of the breach of contract claim against the employer "in no way depends upon proof concerning 'the nature of the union's discharge of its duty of representation.'" *Id.* In other words, where an employer has completely repudiated its obligations under the contract's grievance procedures, this alone suffices to explain the employee's failure to exhaust his remedies under those procedures, without any reference to a breach of the duty of fair representation by the union.

■ However, to take a claim out of the "hybrid" category the employer must actually repudiate the contract's grievance procedures. "An employer's repudiation may take the form of either an express refusal to abide by contractually established grievance and arbitration machinery, ... or conduct which renders the employer unable or apparently unable to comply." *Garcia,* 808 F.2d at 721–22. Plaintiff's complaint, however, alleges neither that RCA or its agents expressly refused to abide by the grievance procedures, nor that RCA took any action rendering it incapable of complying. In fact, plaintiff's only allegation in this respect is that the union failed to inform him of the grievance process, and therefore he never attempted to exercise his rights under that process. *See* Complaint, Count I, ¶ 20. There is no suggestion in the complaint that RCA was under any obligation to initiate the grievance process, and in fact the plain terms of the collective bargaining agreement suggest quite the opposite. *See* Agreement Between RCA Global Communications, Inc. and American Communications Association, Local Union 10, § 33(c) ("There is no responsibility on the Company to make an adjustment of any grievance unless it is presented within thirty (30) calendar days after the occurrence of the acts or omissions of the Company which are the basis of the grievance ..."). Here "all the Company did was fire [plaintiff]; it took no steps that would have precluded him from grieving his dismissal." *D'Amato v. Wisconsin Gas Co.,* 760 F.2d 1474, 1488 (7th Cir.1985); *see also Redmond v. Dresser Industries, Inc.,* 734 F.2d 633, 636 (11th Cir.1984). Therefore, I reject plaintiff's argument that RCA repudiated the collective bargaining agreement's grievance procedure.

Finally, plaintiff argues that even if his wrongful discharge claim is a "hybrid" claim subject to the six month statute of limitations under *DelCostello,* on the facts of this case the complaint was filed within the six-month period. Specifically, plaintiff contends that he did not discover the existence of a violation of the collective bargaining agreement until August 1990, when he first consulted with a lawyer regarding his discharge. This is so, plaintiff argues, because he lacked knowledge of the terms and procedures of the collective bargaining agreement, the defendants failed to inform him regarding his rights under the agreement, and the characterization of the discharge as a "layoff" somehow prevented plaintiff from discovering the existence of any legal remedies for the discharge. Therefore, plaintiff argues, his claim was timely filed within six months after the statute of limitations began to run.

■ Once again, I find plaintiff's argument without merit. Courts generally apply a discovery rule to the statute of limitations for a "hybrid" claim which provides that the period begins to run at the point when a plaintiff knew or, through reason-

able diligence, should have known that he or she possessed a cause of action. *Balsavage v. Ryder Truck Rental, Inc.*, 712 F.Supp. 461, 468 (D.N.J.1989). Specifically, the clock begins to run when the plaintiff knew or should have known of the acts constituting the union's wrongdoing. *Arriaga–Zayas v. Int'l Ladies' Garment Workers' Union*, 835 F.2d 11, 13 (1st Cir. 1987), *cert. denied*, 486 U.S. 1033, 108 S.Ct. 2016, 100 L.Ed.2d 604 (1988). This has variously been described as occurring when the employee "discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation," *Hersh v. Allen Products Co.*, 789 F.2d 230, 232 (3d Cir.1986), or when the "futility" of relying on union assistance "became apparent or should have become apparent" to the employee. *Scott v. Int'l Brotherhood of Teamsters*, 725 F.2d 226, 229 (3d Cir.1984). *See also Lewis v. Int'l Brotherhood of Teamsters*, 826 F.2d 1310, 1318 (3d Cir.1987).

■ In either case, it is plain that plaintiff's "discovery" of the violation was triggered well before six months prior to the filing of the complaint. The union's conduct which constitutes the alleged violation was the failure to assist plaintiff with filing a grievance or otherwise advocate for plaintiff's position in connection with the termination. This failure should have been discoverable almost immediately upon plaintiff's termination. Likewise, if one views the period as beginning when it became apparent that relying on the union for assistance was futile, again this should have occurred shortly after plaintiff was discharged, when the union in fact failed to provide plaintiff with any help. Under the plain terms of the collective bargaining agreement, a grievance must be presented to the employer within 30 days of the acts which form the basis of the grievance. *See* Agreement, § 33(c). Therefore, it should have been clear to plaintiff within a month of his discharge that the union had failed to assist him in filing a timely grievance. "At some point prior to the six month statutory period, the [plaintiff] should have realized that the Union was taking no action on [his] behalf. The [plaintiff] cannot be al-

lowed to sit back and claim a lack of notice in light of circumstances such as these." *Metz v. Tootsie Roll Industries, Inc.*, 715 F.2d 299, 304 (7th Cir.1983), *cert. denied*, 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984).

■ Plaintiff's only argument for tolling the statute of limitations is that he was unfamiliar with the provisions of the collective bargaining agreement until August 1990. However, the discovery rule for "hybrid" claims imposes a duty to exercise due diligence, *see Hersh*, 789 F.2d at 232, which "means familiarity with the collective bargaining agreement, and the making of such inquiries as would be reasonably calculated to acquire the pertinent information concerning the union's breach." *Balsavage*, 712 F.Supp. at 473. *See also Demars v. General Dynamics Corp.*, 779 F.2d 95, 99 (1st Cir.1985). Plaintiff does not suggest that he made any inquiries regarding his rights under the agreement; nor is this a case where the plaintiff claims that he was mislead by the union. *Compare King v. New York Telephone, Inc.*, 785 F.2d 31, 34–35 (2d Cir.1986). Plaintiff's ignorance of the terms of the collective bargaining agreement, without more, provides no basis for tolling the statute of limitations. *See also Illis v. United Steelworkers of America*, 615 F.Supp. 1081, 1085 n. 3 (D.V.I. 1985) (employee "had a duty to familiarize himself with terms of the collective bargaining agreement including the grievance/arbitration provisions, and is charged with knowledge thereof"); *Hull v. Local 414 of the Int'l Brotherhood of Teamsters*, 601 F.Supp. 869, 873 (N.D.Ind.1985) (same).

Consequently, because plaintiff's wrongful discharge claim is a "hybrid" claim governed by a six month statute of limitations, and because that period began to run well before six months prior to the filing of the complaint, I conclude that plaintiff's claim is time barred.

### III. PLAINTIFF'S DISCRIMINATION CLAIMS.

#### A. Preemption.

■ Defendants first argue that plaintiff's discrimination claims under the New

Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5–12, are preempted by the LMRA. This argument is without merit.

The Supreme Court has explained that in the interest of obtaining a "uniform federal interpretation" of collective bargaining agreements, "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 211, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206 (1985). In *Lueck,* for example, the Court held that a state law tort claim was preempted by § 301. Because both the existence and the scope of the state law claim were "ascertained from consideration of the contract itself," *Lueck,* 471 U.S. at 216, 105 S.Ct. at 1914, "any attempt to assess liability ... inevitably [would] involve contract interpretation." *Id.* at 218, 105 S.Ct. at 1914. Likewise, the Court found that a state law tort claim was preempted by § 301 where the "nature and scope of the duty of care owed [plaintiff] [was] determined by reference to the collective bargaining agreement." *Electrical Workers v. Hechler,* 481 U.S. 851, 863 n. 5 (1987).

However, the Supreme Court in *Lueck* also held that "not every dispute concerning employment" is preempted by the LMRA. *Lueck,* 471 U.S. at 211, 105 S.Ct. at 1911; *see also id.* at 220, 105 S.Ct. at 1915. Specifically, § 301

> does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law. In extending the pre-emptive effect of § 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.

*Id.* at 212, 105 S.Ct. at 1912. Only state law claims "inextricably intertwined with

considerations of the terms of the labor contract" are preempted by § 301. *Id.* at 213, 105 S.Ct. at 1912. *See also Malia v. RCA Corp.,* 794 F.2d 909, 912 (3d Cir.1986) ("state-law claims that are independent of collective bargaining agreements are not preempted by § 301 of the LMRA"), *cert. denied,* 482 U.S. 927, 107 S.Ct. 3210, 96 L.Ed.2d 696 (1987).

RCA argues that in this case plaintiff's discrimination claims "arise out of his termination and are completely intertwined with the collective bargaining process," RCA Reply Br. at 8, apparently because the collective bargaining agreement itself prohibits racial discrimination, and therefore resolution of plaintiff's discrimination claims would involve the same factual issues which would be raised in a grievance proceeding under the contract. *See* RCA Br. at 6. This precise argument was rejected by the Supreme Court in *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). In *Lingle* the Court found that a retaliatory discharge claim, derived from a state statute, was not preempted by § 301, even though a "just cause" provision in the collective bargaining agreement also may have prohibited retaliatory discharge. While the Court agreed "that the state-law analysis might well involve attention to the same factual considerations as the contractual determination of whether Lingle was fired for just cause," the Court disagreed that "such parallelism renders the state-law analysis dependent upon the contractual analysis." *Lingle,* 486 U.S. at 408, 108 S.Ct. at 1883. Instead, the court found that the state law claim was independent of the collective bargaining agreement because the claim turned on questions "pertain[ing] to the conduct of the employee and the conduct and motivation of the employer," neither of which "requires a court to interpret any terms of a collective-bargaining agreement." *Id.* at 407, 108 S.Ct. at 1882.

> In other words, even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as

long as the state-law claim can be resolved without intepreting the agreement itself, the claim is "independent" of the agreement for § 301 pre-emption purposes.

*Id.* at 409–10, 108 S.Ct. at 1883.

In this case, both the existence and the scope of plaintiff's state law discrimination claims under the NJLAD are derived independently from state law, and not from the obligations assumed by the parties under the labor agreement. *Cf. Herring v. Prince Macaroni of New Jersey, Inc.,* 799 F.2d 120, 124 n. 2 (3d Cir.1986) (a cause of action based on New Jersey's worker's compensation statute is not preempted by federal labor law "[b]ecause worker's compensation rights are rooted in state law, rather than the collective bargaining agreement"). Indeed, rejecting the argument defendants make here, the Supreme Court in *Lingle* explicitly approved a court of appeals' decision which "recognize[d] that § 301 does not pre-empt state anti-discrimination laws, even though a suit under these laws ... requires a state court to determine whether just cause existed to justify the discharge." *Lingle,* 486 U.S. at 412, 108 S.Ct. at 1885. The Court continued:

> The operation of [state] antidiscrimination laws ... illustrate[s] the relevant point for § 301 pre-emption analysis that the mere fact that a broad contractual protection against discriminatory—or retaliatory—discharge may provide a remedy for conduct that coincidentally violates state law does not make the existence or the contours of the state-law violation dependent upon the terms of the private contract. For even if an arbitrator should conclude that the contract does not prohibit a particular discriminatory or retaliatory discharge, that conclusion might or might not be consistent with a proper interpretation of state law. In the typical case a state tribunal could

resolve either a discriminatory or retaliatory discharge claim without interpreting the "just cause" language of a collective-bargaining agreement.

*Id.* at 412–13, 108 S.Ct. at 1885.

Following *Lingle,* courts have uniformly held that state anti-discrimination laws are not preempted by § 301 of the LMRA because the right not to be discriminated against "is defined and enforced under state law without reference to the terms of any collective bargaining agreement," even where the labor contract itself prohibits discrimination. *Ackerman v. Western Electric Co.,* 860 F.2d 1514, 1517 (9th Cir. 1988); *see also Jackson v. Southern California Gas Co.,* 881 F.2d 638, 644 (9th Cir.1989); *Smolarek v. Chrysler Corp.,* 879 F.2d 1326, 1334 (6th Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989); *Brown v. Holiday Stationstores, Inc.,* 723 F.Supp. 396, 407 (D.Minn. 1989); *Sargent v. Int'l Brotherhood of Teamsters,* 713 F.Supp. 999, 1014 (E.D. Mich.1989); *Barron v. Safeway Stores, Inc.,* 704 F.Supp. 1555, 1564 (E.D.Wash. 1989).[2]

Moreover, as the Supreme Court held in *Lingle,* " 'notwithstanding the strong policies encouraging arbitration, different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers.' " *Lingle,* 486 U.S. at 412, 108 S.Ct. at 1884 (quoting *Atchison, Topeka & Santa Fe R. Co. v. Buell,* 480 U.S. 557, 564–65, 107 S.Ct. 1410, 1415, 94 L.Ed.2d 563 (1987)) (internal quotations removed). In fact, "Congress expressly contemplated that the states would exercise their traditional regulatory powers to prohibit employment discrimination." *United States v. City of Philadelphia,* 798 F.2d 81, 86 n. 5 (3d Cir. 1986). Absent a conflict with federal law, therefore, state discrimination laws are

---

**2.** And even when "a state-law claim may depend for its resolution upon both the interpretation of a collective-bargaining agreement and a separate state-law analysis that does not turn on the agreement," in such a case "federal law would govern the interpretation of the agreement, but the separate state-law analysis would not be

thereby pre-empted." *Lingle,* 486 U.S. at 413 n. 12, 108 S.Ct. at 1885 n. 12. As the Supreme Court held in *Lueck,* 471 U.S. at 211, 105 S.Ct. at 1911, "not every dispute ... tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301...."

also not preempted by federal labor law because "the regulated conduct ... touches interests so deeply rooted in local feeling and responsibility that the court cannot infer that Congress intended to deprive the States of the power to act." *Sargent v. Int'l Brotherhood of Teamsters*, 713 F.Supp. at 1014.

Therefore, I reject defendants' contention that plaintiff's state law discrimination claims are preempted by § 301 of the LMRA.

*B. Statute of Limitations.*

■ Defendants argue in the alternative, however, that plaintiff's claims under the New Jersey Law Against Discrimination are nonetheless time barred under the two-year statute of limitations applicable to claims for injuries "to the person caused by the wrongful act, neglect or default of any person." *See* N.J.S.A. 2A:14–2. I have addressed this precise issue in an earlier opinion where I found that claims under the NJLAD are governed by the six-year statute of limitations applicable to "any tortious injury to the rights of another." *See* N.J.S.A. 2A:14–1. *See Meacham v. Bell Telephone Laboratories, Inc., et al.,* No. 87–3752, slip op. at 10 (D.N.J. Feb. 15, 1990). I reaffirm that result today.

Every New Jersey state court to address this issue has applied the six-year statute of limitations to claims under the NJLAD. *See Nolan v. Otis Elevator Co.,* 197 N.J. Super. 468, 473–74, 485 A.2d 312 (App.Div. 1984), *rev'd on other grounds,* 102 N.J. 30, 505 A.2d 580, *cert. denied,* 479 U.S. 820, 107 S.Ct. 84, 93 L.Ed.2d 38 (1986); *Leese v. Doe,* 182 N.J.Super. 318, 321, 440 A.2d 1166 (Law Div.1981); *see also Fisher v. Quaker Oats Co.,* 233 N.J.Super. 319, 320, 559 A.2d 1 (App.Div.), *cert. denied,* 117 N.J. 628, 569 A.2d 1331 (1989); *Skadegaard v. Farrell,* 578 F.Supp. 1209, 1213–14 (D.N.J.1984).

At various points defendants appear to argue that later federal court decisions have somehow "overruled" the New Jersey state court cases applying the six-year stat-

ute of limitations to NJLAD claims. *See, e.g.,* RCA Reply Br. at 8; Teamsters Reply Br. at 7. This argument is utterly specious. As the Supreme Court has "repeatedly ... held" "state courts are the ultimate expositors of state law, ... and ... we are bound by their constructions except in extreme circumstances not present here." *Mullaney v. Wilbur,* 421 U.S. 684, 691, 95 S.Ct. 1881, 1886, 44 L.Ed.2d 508 (1975).[3] Consequently, when "an appeal to this court challenges an application of state law, we are not free to indulge our preferences as to how the common law should best develop." *Adams v. Madison Realty & Development, Inc.,* 853 F.2d 163, 168 (3d Cir.1988). *See also Roman Ceramics Corp. v. Peoples Nat'l Bank,* 714 F.2d 1207, 1213 (3d Cir.1983); *System Operations, Inc. v. Scientific Games Development Corp.,* 555 F.2d 1131, 1142 (3d Cir.1977) ("federal court's independent determination of policy is quite irrelevant ... if it is inconsistent with the state law which the court is obliged to apply"); *Wine Imports, Inc. v. Northbrook Property & Casualty Insurance Co.,* 708 F.Supp. 105, 107 (D.N.J.1989); *Bambu Sales, Inc. v. Gibson,* 474 F.Supp. 1297, 1301 (D.N.J. 1979). Instead, a federal court is simply "obliged to apply the substantive law of the state" and "substantive law includes statutes of limitations." *McGowan v. University of Scranton,* 759 F.2d 287, 290 (3d Cir.1985).

■ Alternatively, however, defendants reason that because the NJLAD itself does not supply a statute of limitations, and the New Jersey Supreme Court has not yet addressed the question, I am not obliged to follow the holdings of the New Jersey courts. Ordinarily, of course, we would be "bound ... to follow the law as decided by the highest court of the State of New Jersey." *Commercial Union Insurance Co. v. Bituminous Casualty Corp.,* 851 F.2d 98, 100 (3d Cir.1988). However, "the fact that the New Jersey Supreme Court has not directly addressed

---

**3.** An example of such an "extreme circumstance" would be where the state court decision is an "obvious subterfuge to evade consideration of a federal issue." *Mullaney,* 421 U.S. at 691 n. 11, 95 S.Ct. at 1886 n. 11.

the issue now before the court" does *not* give me "free rein in interpreting the state statute." *Copeland v. Johns–Manville Products Corp.*, 492 F.Supp. 498, 501 (D.N.J.1980). Quite the contrary, the "decisions of the lower appellate courts may be persuasive, should be accorded proper regard and are *presumptive evidence* of state law." *Commercial Union Insurance*, 851 F.2d at 100 (emphasis added). *See also McGowan v. University of Scranton*, 759 F.2d at 291; *Ciccarelli v. Carey Canadian Mines, Ltd.*, 757 F.2d 548, 553 n. 3 (3d Cir.1985). Consequently, although the New Jersey state court decisions applying a six-year statute of limitations to NJLAD claims are not dispositive where the New Jersey Supreme Court has not spoken, I must "attribute significant weight to these decisions in the absence of any indication that the highest state court would rule otherwise." *Wisniewski v. Johns–Manville Corp.*, 759 F.2d 271, 273–74 (3d Cir. 1985). For example, in *General Electric Credit Corp. v. Ger–Beck Machine Co.*, 806 F.2d 1207, 1209–10 (3d Cir.1986) the Third Circuit considered itself bound to follow a New Jersey Appellate Division opinion where there was "no indication that the New Jersey Supreme Court would disapprove the decision." As the Supreme Court has explained:

> A state is not without law save as its highest court has declared it. There are many rules of decision commonly accepted and acted upon by the bar and inferior courts which are nevertheless laws of the state although the highest court of the state has never passed upon them. In those circumstances a federal court is not free to reject the state rule merely because it has not received the sanction of the highest state court, even though it thinks the rule is unsound in principle or that another is preferable. State law is to be applied in the federal as well as the state courts and it is the duty of the former in every case to ascertain from all the available data what the state law is and apply it rather than to prescribe a different rule, however superior it may appear from the viewpoint of "general law" and however much the state rule may have departed from prior decisions of the federal courts.

> Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.

*West v. American Telephone & Telegraph Co.*, 311 U.S. 223, 236–37, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940). *See also Wine Imports, Inc. v. Northbrook Property & Casualty Insurance Co.*, 708 F.Supp. 105, 106 (D.N.J.1989) (despite a contrary decision by the Third Circuit, district court followed Appellate Division decision on the availability of punitive damages under state law, given " 'the absence of an expression of a countervailing view by the State's highest court' ") (quoting *Fidelity Union Trust Co. v. Field*, 311 U.S. 169, 178, 61 S.Ct. 176, 179, 85 L.Ed. 109 (1940)); *Pipon v. Burroughs–Wellcome Co.*, 532 F.Supp. 637, 639 (D.N.J.) (refusing "not to consider itself bound by the Appellate Division cases, and to forecast that the Supreme Court of New Jersey would rule otherwise"), *aff'd without opinion*, 696 F.2d 984 (3d Cir. 1982); *Copeland v. Johns–Manville Products Corp.*, 492 F.Supp. 498, 501–02 (D.N.J. 1980) (even though district court did "not share the confidence" of the Appellate Division in the latter's interpretation of a state statute, because its role was "to apply the law as interpreted by the New Jersey courts, not to provide its own independent interpretation" the district court felt "constrained to follow the decision" of the Appellate Division).

Defendants point to not a single utterance from the New Jersey Supreme Court which suggests that it would not follow the lower court decisions applying a six-year statute of limitations to NJLAD claims. Instead, defendants rely on federal decisions, which for the most part are simply irrelevant, inasmuch as they address not the statute of limitations under the NJLAD, but rather the statute of limitations under federal civil rights statutes.

See, e.g., *Cito v. Bridgewater Township Police Dep't*, 892 F.2d 23, 25 (3d Cir.1989) (applying two-year statute of limitations to claims under 42 U.S.C. § 1983); *Rodriguez v. City of Passaic*, 730 F.Supp. 1314, 1316 n. 1 (D.N.J.) (same), *aff'd without opinion*, 914 F.2d 244 (3d Cir.1990); *Black Whale, Inc. v. Borough of Beach Haven*, No. 89–3408, slip op. at 10–11, 1990 WL 24951 (D.N.J. Feb. 9, 1990) (same). Needless to say, federal court decisions interpreting federal statutes provide only treacherous ground for second-guessing state courts construing state statutes.

Citing the district court opinion in *White v. Johnson & Johnson Products, Inc.*, 712 F.Supp. 33 (D.N.J.1989), however, defendants argue that the New Jersey courts would necessarily follow developments in federal law, and thereby apply a two-year statute of limitations.[4] The court in *White* reasoned that the Law Division in *Leese v. Doe*, 182 N.J.Super. 318, 440 A.2d 1166 (Law Div.1981), relied on *Davis v. United States Steel Supply*, 581 F.2d 335 (3d Cir. 1978), which had held that Pennsylvania's six-year statute of limitations for contract or tort actions not involving bodily injury applied to claims under 42 U.S.C. § 1981. *See Leese v. Doe*, 182 N.J.Super. at 321, 440 A.2d 1166. The court in *White* pointed out, however, that *Davis* was effectively overruled by the Supreme Court in *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 661–62, 107 S.Ct. 2617, 2621, 96 L.Ed.2d 572 (1987), which held that claims under 42 U.S.C. § 1981 are essentially for "injury to the individual rights of a person" and therefore are governed by limitations periods for personal injury actions. Assuming, therefore, that the New Jersey courts would necessarily follow federal law, the court in *White* reasoned that claims under the NJLAD would likewise be treated as injuries to the individual rights of a person and therefore governed by the two-year statute of limitations for "injury to the person caused by the wrongful act, neglect or default of any person." *White*, 712 F.Supp. at 37–38. *See* N.J.S.A. 2A:14–2.

Assuming *arguendo* that a New Jersey court following federal law would necessarily apply a two-year statute of limitations to NJLAD claims,[5] I nonetheless find this argument wholly unpersuasive. There is little reason to believe that New Jersey courts will exhibit slavish devotion to federal law in interpreting the NJLAD. Quite the contrary, in construing New Jersey antidiscrimination law, enacted nearly twenty years before the analogous federal statute prohibiting employment discrimination, *see Shaner v. Horizon Bancorp.*, 116 N.J. 433, 436, 561 A.2d 1130 (1989); *Nolan v. Otis Elevator Co.*, 102 N.J. 30, 48, 505 A.2d 580, *cert. denied*, 479 U.S. 820, 107 S.Ct. 84, 93 L.Ed.2d 38 (1986), New Jersey courts have not considered themselves bound by federal case law, "even though [the NJLAD] relates essentially to the same subject matter as the parallel federal civil rights law. We are free to apply our own concept of that which is right and proper in the circumstances." *Castellano v. Linden Board of Education*, 158 N.J.Super. 350, 360, 386 A.2d 396 (App.Div.1978) (holding that pregnancy discrimination violated NJLAD despite contrary United States Supreme Court precedent), *modified on other grounds*, 79 N.J. 407, 400 A.2d 1182 (1979). Moreover, "mindful of the clear and positive policy of our state against discrimination," New Jersey courts have consistently held that "[e]ffectuation of that mandate calls for liberal interpretation of any legislative enactment designed to implement it." *Castellano*, 158 N.J.Super. at 361, 386 A.2d

---

**4.** Defendants also rely on the unpublished opinion in *Pachilio v. Union Carbide*, No. 89–1237, slip op. at 4–5, 1990 WL 4630 (D.N.J. Jan. 3, 1990). However, *Pachilio* merely followed the opinion in *White* and added nothing to the analysis therein.

**5.** This assumption is by no means demanded by logic, given that the six-year statute of limitations applies to "any tortious injury to the *rights* of another" not enumerated in N.J.S.A. 2A:14–2

(personal injuries caused by wrongful act, neglect or default) or N.J.S.A. 2A:14–3 (libel or slander). *See* N.J.S.A. 2A:14–1 (emphasis added). *Cf. Hamilton v. City of Overland Park*, 730 F.2d 613, 614 (10th Cir.1984) (applying Kansas statute of limitations for "action for injury to the rights of another" to 42 U.S.C. § 1983 claim), *cert. denied*, 471 U.S. 1052, 105 S.Ct. 2111, 85 L.Ed.2d 476 (1985).

396. *See also Fraser v. Robin Dee Day Camp,* 44 N.J. 480, 486, 210 A.2d 208 (1965); *Director, Division on Civil Rights v. Slumber, Inc.,* 166 N.J.Super. 95, 101–02, 398 A.2d 1345 (App.Div.1979), *modified on other grounds,* 82 N.J. 412, 413 A.2d 603 (1980); *National Organization for Women v. Little League Baseball, Inc.,* 127 N.J.Super. 522, 530, 318 A.2d 33 (App. Div.), *aff'd without opinion,* 67 N.J. 320, 338 A.2d 198 (1974).

Moreover, the suggestion that New Jersey state courts are guided by federal law in selecting a statute of limitations for the NJLAD is completely undercut by the Appellate Division's decision in *Nolan v. Otis Elevator, supra.* The court in *Nolan,* without citing the Law Division's decision in *Leese v. Doe,* and without making any reference to federal law whatsoever, flatly held that a six year statute of limitations applied to NJLAD claims, simply by reference to the statute of limitations applicable to tortious injury to the rights of another. *See Nolan v. Otis Elevator,* 197 N.J.Super. at 473–74, 485 A.2d 312 (citing N.J.S.A. 2A:14–1). The Appellate Division's decision in *Nolan v. Otis Elevator* is not even cited, much less explained, by the court in *White.* Furthermore, less than one month after *White* was decided, despite the supposedly determinative developments in federal law, the Appellate Division reaffirmed its opinion in *Nolan* by holding that the six-year statute of limitations for the NJLAD was not preempted by the shorter limitations period of the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq. See Fisher v. Quaker Oats Co.,* 233 N.J.Super. 319, 320, 559 A.2d 1 (App.Div.1989); *see also id.* at 323, 559 A.2d 1 ("Title VII does not prevent states from enforcing more expansive discrimination laws").[6]

Therefore, consistent with the uniform view of the New Jersey state courts, I conclude that the six-year statute of limitations for "tortious injury to the rights of another" applies to plaintiff's claims under the NJLAD. Because plaintiff filed his complaint well within the applicable period, I deny defendants' motion to dismiss plaintiff's discriminations claims as time barred.

## IV. LACK OF SERVICE ON INDIVIDUAL DEFENDANTS.

 All of the individual defendants move to dismiss the complaint as against them on the basis that they have not been properly served. Plaintiff concedes that he has been unable to serve these defendants, but points out that under Fed.R.Civ.P. 4(j) he is entitled to 120 days after filing the complaint to effect service. The complaint was filed on January 28th; therefore, plaintiff reasons, he is entitled to another month in which to serve the summons and complaint.[7]

I agree that defendants' motion to dismiss for lack of service is, at best, premature. Rule 4(j) would serve little purpose if a complaint were subject to dismissal at any time after filing for failure to effect service. Therefore, I deny defendants' motion to dismiss the complaint for lack of service.

## V. REMAND TO STATE COURT.

 Because I have concluded that the complaint's first count for wrongful discharge, treated as a "hybrid" claim under the LMRA, should be dismissed, the only remaining claims in this action are plaintiff's state law discrimination claims. Under the Supreme Court's decision in *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988), when all federal claims have been eliminated and only state law claims re-

6. Indeed, it is not entirely clear that the Law Division relied solely on federal case law in *Leese v. Doe, supra,* for that court also expressed the concern that applying a shorter statute of limitations could "preclude[ ] plaintiff's action altogether," even though "plaintiff had filed her original complaint with the Division on Civil Rights well within the 180–day limitations of N.J.S.A. 10–5–18." *Leese v. Doe,* 182 N.J.Super. at 321–22, 440 A.2d 1166.

7. Arguably, plaintiff may be entitled to even more time if the 120–day period begins to run from the date of removal rather than the date of the filing of the complaint. *See, e.g., Motsinger v. Flynt,* 119 F.R.D. 373, 376–77 (M.D.N.C.1988).

main, a federal district court has discretion to remand a properly removed case to state court. In considering whether to remand, a district court should consider what "best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine." *Id.* at 357, 108 S.Ct. at 622. In particular, the Court noted that "[w]hen the single federal-law claim in the action [i]s eliminated at an early stage of the litigation, the District Court ha[s] a powerful reason to choose not to continue to exercise jurisdiction." *Id.* at 351, 108 S.Ct. at 619. *See also id.* at 350 n. 7, 108 S.Ct. at 619 n. 7. Especially where, as here, there has been no substantial commitment of judicial resources to the nonfederal claims, it is "akin to 'making the tail wag the dog' for the District Court to retain jurisdiction." *Cole v. Pathmark of Fairlawn,* 672 F.Supp. 796, 807 (D.N.J. 1987).

Defendants' only argument against remand is premised on their belief that the remaining state law discrimination claims may be easily disposed of on statute of limitation grounds. Having already concluded, however, that plaintiff's state law claims are, in fact, not time-barred, this point loses its force entirely. Moreover, to the extent there remains any doubt regarding the correct interpretation of state law, comity dictates that this dispute be resolved in state court.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss Count I of plaintiff's complaint as time barred is granted, but defendants' motion to dismiss the remainder of plaintiff's complaint is denied. Because all federal claims have been eliminated from this case, the action is remanded to state court. An appropriate order follows.