**Mary Esterlyn WHITE, Plaintiff,**

v.

**JOHNSON & JOHNSON PRODUCTS, INC., et al., Defendants.**

Civ. A. No. 85–1736.

United States District Court, D. New Jersey.

April 28, 1989.

Lennox S. Hinds, Stevens Hinds & White, P.C., New York City, for plaintiff.

James E. Farrell, Jr., Jones, Day, Reavis & Pogue, Los Angeles, Cal., for defendants.

## OPINION

WOLIN, District Judge.

Plaintiff Mary E. White has brought this action for alleged racial discrimination under 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; and the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. § 10:5–1 *et seq.* White, a black woman, was employed from 1975 until her discharge on August 27, 1984 as a scientist with defendant Johnson & Johnson Products, Inc. (JJP). She alleges that JJP discriminated against her with respect to job promotions, denied her terms and conditions of employment equivalent to those offered to similarly situated white males, subjected her to harassment because of her race, and fired her in retaliation for her bringing administrative charges of discrimination before the New Jersey Division of Civil Rights and the federal Equal Employment Opportunity Commission. Plaintiff has also named as defendants Drs. John V. Scibelli and Thomas Gerding, who were, respectively, her direct and indirect supervisors at JJP. White seeks legal and equitable remedies, including compensatory and punitive damages, retroactive reinstatement and promotion, backpay and frontpay. Defendants deny that they engaged in racial discrimination and allege that all actions taken against plaintiff were based on legitimate business reasons having nothing to do with race. Defendants further deny that plaintiff's discharge was retaliatory, citing instead plaintiff's alleged falsification of scientific data pertaining to the testing of JJP products.

In their answer defendants raise various statute-of-limitations defenses that allegedly bar each of plaintiff's claims in part. The allegedly discriminatory acts took place from October 1982 until plaintiff's discharge on August 27, 1984; plaintiff did not file suit until April 11, 1985. The parties have addressed the validity of these defenses in their pre-trial memoranda. Having carefully considered the parties' arguments, the Court finds the statute-of-limitations defenses with respect to the § 1981 and NJLAD claims to be unavailing and will thus strike those defenses.

## DISCUSSION

### I. *Section 1981 Claims*

■ Defendants argue that plaintiff's claims under 42 U.S.C. § 1981 are partially time barred by virtue of *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987). In *Goodman* the Supreme Court held that because § 1981 does not contain a statute of limitations, federal courts should select and apply "the most appropriate or analogous state statute of limitations." *Id.* at 660, 107 S.Ct. at 2620. The Court went on to hold that the applicable statute of limitations for § 1981 claims is the state statute pertaining to personal injury claims. *Id.* at 661, 107 S.Ct. at 2621. In so holding the Supreme Court rejected an argument that the (generally longer) contract statute of limitations should apply. *Id.*

N.J.S.A. § 2A:14–2 provides a two-year limitations period for claims involving tortious injury to the person of another. Plaintiff was discharged on August 27, 1984 and filed suit on April 11, 1985. Defendants contend that the application of the two-year statute of limitations would bar any acts of discrimination that occurred prior to April 11, 1983. For example, plaintiff alleges that her removal from the managerial ladder and placement on the technical ladder by defendant Scibelli in January

1983 was a racially motivated demotion. She also alleges that she was excluded from a departmental meeting convened by Scibelli on April 5, 1983 on the basis of her race. Defendants would have this Court exclude evidence of these acts and all other alleged acts of racial discrimination occurring before April 11, 1983.

As plaintiffs point out, however, the rule in *Goodman* does not necessarily apply to this particular case. Although the *Goodman* Court recognized that the usual rule is that federal cases should be decided under the law as it stands at the time of decision, the Court noted that nonretroactivity is necessary to avoid injustice where the decision "overrule[s] clear Circuit precedent on which the complaining party was entitled to rely, because the new limitations period [was] occasioned by a change in the substantive law the purpose of which would not be served by retroactivity." *Id.*, 107 S.Ct. at 2621 (citing *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed. 2d 296 (1971)). The *Goodman* Court nevertheless did not grant petitioners the benefit of nonretroactivity, but its refusal to do so was based on the fact that at the time their cause of action arose (and until four years thereafter) there was no circuit court authority holding in petitioners' favor on which they were entitled to rely. *Id.*, 107 S.Ct. at 2621–22. The Court cited with approval and went out of its way to distinguish *Al–Khazraji v. St. Francis College*, 784 F.2d 505 (3d Cir.1986), *aff'd*, 481 U.S. 604, 607–10, 107 S.Ct. 2022, 2025–26, 95 L.Ed.2d 582 (1987), a case in which the Third Circuit refused to apply the personal injury statute of limitations retroactively in a § 1981 action because at the time appellant's cause of action arose there was reliable authority holding that the (longer) contract statute of limitations applied in

§ 1981 claims. *Id.* at 512–14 (citing *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894 (3d Cir.1977) and other cases); *see Goodman*, 482 U.S. at 661–64, 107 S.Ct. at 2621–22. Indeed, one month before its opinion in *Goodman* the Supreme Court had affirmed the Third Circuit's ruling in *Al–Khazraji*, although for some reason the *Goodman* opinion makes no mention of that affirmance.

The case at bar falls squarely within the nonretroactivity exception recognized by the Supreme Court in *Goodman* and applied by the Supreme Court and the Third Circuit in *Al–Khazraji*. Plaintiff Mary White's cause of action arose after 1977, when the principle of *Meyers* was established, but before the Supreme Court's opinion in *Goodman* (and arguably *Wilson v. Garcia*, 471 U.S. 261, 266–68, 105 S.Ct. 1938, 1942–43, 85 L.Ed.2d 254 (1985), which held that the state personal injury statute of limitations applies in actions under 42 U.S.C. § 1983) overruled that principle. Plaintiff was entitled to rely on *Meyers* in the period from when her cause of action arose until April 11, 1985, when she filed suit.

Therefore the Court will apply N.J.S.A. § 2A:14–2, the New Jersey statute of limitations governing claims of tortious injury to the property or rights of another and claims of breach of contract. Under the six-year limitations period provided by that statute, plaintiff's claims are timely with respect to all of her allegations; the allegedly discriminatory acts took place from October 1982 to August 1984 and plaintiff filed suit in April 1985.[1] Accordingly, the Court will strike defendants' partial statute-of-limitations defense pertaining to the § 1981 claims.[2]

---

**1.** Even if the Court were to apply the two-year statute of limitations, it is not clear that plaintiff's action would be partially time barred. The parties have not addressed the possibility that the continuing violation exception applicable to Title VII cases, *see infra* Part II, may be applicable to § 1981 claims as well. The Court need not reach this issue, and expresses no opinion on its potential resolution.

**2.** The Court notes defendants' failure to cite *Al–Khazraji* or the dicta in *Goodman*. Under the Model Rules of Professional Conduct, which govern the conduct of attorneys in this Court pursuant to Rule 6 of the General Rules of this District, "[a] lawyer shall not knowingly … fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel." MRPC 3.3(a)(3).

## II. *Title VII Claims*

■ Defendants next contend that plaintiff's claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, are limited to events subsequent to May 3, 1983. In support of this argument plaintiff notes that charges of employment discrimination under Title VII must be filed with the Equal Employment Opportunity Commission (EEOC) within 180 days of the allegedly unlawful practice, or, if proceedings were initially instituted before an authorized state agency, within 300 days of the allegedly unlawful practice (or within 30 days of receiving notice that the state agency has terminated the proceedings, whichever is earlier). 42 U.S.C. § 2000e–5(e). Failure to file within the applicable period bars the claim. *EEOC v. Commercial Office Products Co.*, 486 U.S. 107, ——, 108 S.Ct. 1666, 1674, 100 L.Ed. 2d 96 (1988); *Masco v. United Airlines*, 574 F.2d 1127, 1128–29 (3d Cir.1978).

Plaintiff filed her charges with the New Jersey Division of Civil Rights on February 10, 1984, and filed charges with the EEOC shortly thereafter, on February 28, 1984. Defendants concede that plaintiff has complied with the Title VII prerequisites, but argue that all alleged acts of discrimination predating May 3, 1983 (300 days before February 28, 1984) are time barred and should not be considered in support of plaintiff's claim. In response, plaintiff seeks to bring those earlier acts within the umbrella of the "continuing violation" exception to the strict time requirements of Title VII. *See United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977). Under this exception, plaintiff must show " 'a series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the [limitations] period.' " *Valentino v. United States Postal Service*, 674 F.2d 56, 65 (D.C.Cir.1982) (quoting B. Schlei & P. Grossman, Employment Discrimination Law 232 (Supp.1979)); *see also Olson v. Rembrandt Printing Co.*, 511 F.2d 1228, 1233–34 (8th Cir.1975). Plaintiff's claim rests solidly within the "continuing violation" exception because she is alleging acts of discrimination both before and after May 3, 1983, all of which constitute an alleged continuum of discrimination leading to her discharge. *Cf. Valentino*, 674 F.2d at 65–66; *Olson*, 511 F.2d at 1234. As the *Olson* court noted, "[f]or ... a former employee the date of discharge or resignation is the controlling date under the statute, and a charge of employment discrimination must be timely filed in relation to that date." 511 F.2d at 1234. However, at the time she filed her administrative petitions, plaintiff was still a *current* employee of JJP. The continuing discrimination theory has particular validity with respect to present employees. *Id.* (citing *Griggs v. Duke Power Co.*, 401 U.S. 424, 429–30, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971)). Moreover, at the time of her discharge a present *violation* allegedly existed, so the Supreme Court's narrow interpretation of the continuing violation exception in *United Air Lines*, *see* 431 U.S. at 558, 97 S.Ct. at 1889, does not defeat the applicability of the exception to plaintiff's case. In other words, plaintiff has met her obligation of coming forth with "allegations connecting [the] remote claims to the ones for which timely complaints were filed." *Milton v. Weinberger*, 645 F.2d 1070, 1077 (D.C.Cir.1981); *see also Mucci v. Moonachie Board of Education*, 37 Fair Empl.Prac.Cas. (BNA) 65, 66 (D.N.J.), *modified on other grounds*, 37 Fair Empl.Prac. Cas. 1284 (D.N.J.1985). Of course, the Court's ruling that the statute of limitations does not bar plaintiff's claim applies only to the complaint itself; based on the evidence offered at trial, the Court will have to decide whether plaintiff has satisfied the "continuing violation" exception. Accordingly, the Court will allow defendants' partial statute-of-limitations defense with respect to the Title VII claims to remain.

## III. *NJLAD Claims*

■ Finally, defendants contend that plaintiff's claims under the NJLAD are partially time barred to the same extent that defendants argued with respect to the § 1981 claims. The NJLAD does not speci-

fy a statute of limitations, so the Court must select from among the general statutes of limitations enacted in New Jersey. N.J.S.A. § 2A:14–1 establishes a six-year limitations period for tortious injury to the property or rights of another; N.J.S.A. § 2A:14–2 provides for a two-year limitations period for tortious injury to the person of another. The New Jersey Supreme Court has not yet ruled on the appropriate statute of limitations in an action under the NJLAD. *See Skadegaard v. Farrell*, 578 F.Supp. 1209, 1213 (D.N.J.1984). " 'In the absence of an authoritative pronouncement from the state's highest court, the task of a federal court is to predict how that court would rule.' " *Blum v. Witco Chemical Corp.*, 829 F.2d 367, 376 (3d Cir.1987) (quoting *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1167 (3d Cir.1981)).

■ The only New Jersey state case cited by the parties that has addressed the issue is *Leese v. Doe*, 182 N.J.Super. 318, 321, 440 A.2d 1166, 1168 (Law Div.1981), which ruled that the six-year statute pertaining to claims for injury to property governs NJLAD claims. A federal district court may give serious consideration to the opinion of an intermediate appellate court in the absence of a decision by the state's highest court. *Aetna v. Farrell*, 855 F.2d 146, 148–49 (3d Cir.1988). Indeed, such an opinion may be deemed to be presumptive evidence of state law. *Commercial Union Insurance Co. v. Bituminous Casualty Corp.*, 851 F.2d 98, 100 (3d Cir.1988). No such presumption applies to state trial court opinions. Of course, the Court may take such opinions into consideration, especially where, as here, two other judges of this Court have followed the *Leese* decision. *See Mucci*, 37 Fair Empl.Prac.Cas. at 68 (Fisher, C.J.); *Skadegaard*, 578 F.Supp. at 1213–14 (Ackerman, J.).

Importantly, however, both *Leese* and one of the federal cases following it based their holdings on the Third Circuit case that was overruled by *Goodman* in the

§ 1981 context, namely, *Davis v. United States Steel Supply*, 581 F.2d 335 (3d Cir. 1978). *See Leese*, 182 N.J.Super. at 320–21, 440 A.2d at 1167–68; *Skadegaard*, 578 F.Supp. at 1214.[3] The *Davis* court had held that if a § 1981 claim is to be analogized to a tort action, it should be analogized to torts involving the wrongful interference with another's economic rights or interests. 581 F.2d at 339. The Supreme Court in *Goodman* rejected this reasoning, and held:

Insofar as [§ 1981] deals with contracts, it declares the personal right to make and enforce contracts, a right, as the section has been construed, that may not be interfered with on racial grounds. The provision asserts, in effect, that competence and capacity to contract shall not depend upon race. It is thus part of a federal law barring racial discrimination, which ... is a fundamental *injury to the individual rights of a person....* That § 1981 has far-reaching economic consequences does not change this conclusion, since such impact flows from guaranteeing the *personal right* to engage in economically significant activity free from racially discriminatory interference. The Court of Appeals was correct in selecting the ... limitations period governing personal injury actions.

482 U.S. at 661–62, 107 S.Ct. at 2621 (emphasis added).

The same conclusion may be reached with respect to the NJLAD. Although it has wide-ranging economic consequences, it is fundamentally aimed at eliminating the injury that racial discrimination causes to the person of the aggrieved. *See* N.J.S.A. § 10:5–4 (declaring the opportunity to obtain employment, public accommodations, public housing assistance and other real property without regard to race and other factors to be a "civil right"); *see also* N.J.S.A. § 10:5–3 (stating legislative finding that discrimination based on race and other factors "threatens not only the rights and proper privileges of the inhabitants of the State but menaces the institutions and

---

**3.** The other federal case discussed above, *Mucci*, was based indirectly on *Davis* in that this Court in *Mucci*, per Chief Judge Fisher, chose to follow *Leese*, which was in turn, as already noted, based on *Davis*. *See Mucci*, 37 Fair Empl.Prac. Cas. at 68.

foundation of a free democratic State"). Of course, the New Jersey Supreme Court may very well choose to apply the six-year statute of limitations for property damage claims provided by N.J.S.A. § 2A:14–1 to NJLAD claims in the interest of liberal construction of the NJLAD, but this Court cannot so assume. The Court can only assume that if the issue were before the highest court of New Jersey, that court would do as the Superior Court did in *Leese* and look to federal law for guidance, but would find the current federal guidance (in contrast to what existed at the time of *Leese*) to favor application of the personal injury statute of limitations to NJLAD claims. Thus the Court agrees with defendants that the New Jersey Supreme Court would most likely apply the two-year limitations period of N.J.S.A. § 2A:14–1 to NJLAD claims.

Nevertheless, based on the nonretroactivity rationale discussed above with respect to the § 1981 claim, the Court will not apply this holding retroactively, since plaintiff was entitled to rely on *Leese, Mucci* and *Skadegaard* during the period before she filed her complaint. Although *Goodman* and *Al–Khazraji* appear to say that only circuit court precedent (or presumably the state equivalent thereof when state claims are at issue) can form the basis of reasonable reliance for purposes of the nonretroactivity exception, *see* 482 U.S. at 661–64, 107 S.Ct. at 2621–22; 481 U.S. at 607–10, 107 S.Ct. at 2025–26, another Supreme Court case belies the talismanic effect of appellate authority. In *Chevron, supra,* in which the Court synthesized its past holdings and restated the nonretroactivity exception, the Court stated that "the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, *or by deciding an issue of first impression whose resolution was not clearly foreshadowed.*" 404 U.S. at 106, 92 S.Ct. at 355 (citations omitted). Of course, to the extent that *Goodman* contradicts *Chevron* and disallows nonretroactivity where the new rule resolves an issue of first impression, *Goodman* controls since it is the later case.

However, it is preferable to attempt to harmonize the two Supreme Court cases, which can be done as follows: The authority on which plaintiff relied, although not necessarily appellate precedent, must be clear and established enough so that reliance is reasonable. Trial court opinions from the relevant jurisdiction reaching a similar outcome can constitute clear and established precedent but only if they are sufficient in number and well grounded on analogous appellate decisions. In the case at bar, plaintiff could have relied on two opinions of this Court and one opinion of a New Jersey trial court that reached the same result on an issue of New Jersey law and that were based on an analogous ruling of the Third Circuit, *i.e.,* in *Davis.* The net effect of this authority was to establish precedent clear enough to form the basis of reasonable reliance. Moreover, retrospective application of the personal injury statute of limitations to NJLAD claims would not significantly further the purposes of the statute but would cause an inequitable result. *See Chevron,* 404 U.S. at 106–07, 92 S.Ct. at 355.

Therefore the Court will strike defendants' partial statute-of-limitations defense with respect to the NJLAD claim as well.

## CONCLUSION

Defendants' defenses based on the statute of limitations will be stricken with respect to plaintiff's claims under 42 U.S.C. § 1981 and the New Jersey Law Against Discrimination, N.J.S.A. § 10:5–1 *et seq.* The statute-of-limitations defense will be allowed to remain with respect to plaintiff's claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*