**UNITED STATES of America, Plaintiff,**

v.

**BOARD OF EDUCATION OF the TOWNSHIP OF PISCATAWAY, Defendant.**

**Sharon TAXMAN, Plaintiff–Intervenor**

v.

**BOARD OF EDUCATION OF the TOWNSHIP OF PISCATAWAY, Defendant.**

**Civ. A. No. 92–340(MTB).**

United States District Court, D. New Jersey.

Aug. 4, 1992.

William B. Fenton, Steven H. Schlesinger, U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Rubin, Rubin, Malgran & Kuhn by David B. Rubin, Piscataway, N.J., for defendant.

Klausner, Hunter & Cige by Stephen E. Klausner, Somerville, N.J., for plaintiff-intervenor.

## OPINION

BARRY, District Judge.

## I. INTRODUCTION

This action is brought by the United States against the Board of Education of the Township of Piscataway ("Board") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The United States alleges that the Board discriminated against Sharon Taxman by terminating or laying her off from her position as a school teacher at Piscataway High School on the basis of her race and by failing and refusing to take appropriate action to remedy the alleged discrimination. Complaint ¶ 5. It further alleges that the Equal Employment Opportunity Commission ("EEOC") received a timely charge of discrimination filed by Taxman, that the EEOC investigated the charge and found that there was probable cause to believe that the charge of discrimination was true, and that all conditions precedent to filing suit had been met. Complaint ¶¶ 6–7.

On April 15, 1992, the Hon. Stanley R. Chesler, U.S.M.J., granted Taxman's motion to intervene as a party plaintiff, pursuant to 42 U.S.C. § 2000e–5(f)(1), without prejudice to the Board's right to move to dismiss her claims brought pursuant to the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5–1 *et seq.*, on statute of limitations grounds. Taxman filed a complaint on April 29, 1992, and an amended complaint on May 26, 1992, raising claims under Title VII and the NJLAD. Presently before the court are the Board's motion to dismiss Taxman's NJLAD claims as time barred as well as its motion for "an order: (a) determining that the applicable legal standards for determining defen-

Michael Chertoff, U.S. Atty., D.N.J. by Susan Cassell, Deputy Chief, Civ. Div. and

dant's liability are based on *United Steelworkers of America v. Weber;* and (b) barring relitigation of Sharon Taxman's seniority rights under New Jersey law." *See* Notice of Motion filed June 10, 1992.

## II.   Background

On June 8, 1989, Taxman filed a dual charge of discrimination with the EEOC and the New Jersey Division on Civil Rights ("NJDCR") [1] claiming that she was discharged from her position as a Business Education teacher by her employer, the Board of Education of Piscataway Township, on the basis of her race. Taxman's Br. in Opp. to Motion to Dismiss, Exh. A. Specifically, Taxman, who is white, alleges that she was terminated during a reduction in force which required that either she or another Business Education teacher, who is black, be terminated. The reason given for her termination, the charge alleges, was the Board's "commitment to affirmative action." *Id.* Taxman claims that she has been certified to teach Business Education for nine years, that she has taught a broader range and more advanced courses than the black teacher who was retained, that she is more experienced than the teacher retained, and that in every evaluation she received she was rated "excellent." *Id.*

## III.   Statute of Limitations on NJLAD Claims

■ The Board argues that Taxman's NJLAD claims should be dismissed because they are barred by a two-year limitations period which has expired. Taxman counters that the appropriate statute of limitations is six years and that even if the limitations period is deemed to be two years, her claims should not be dismissed because the filing of her charge with the EEOC tolled the limitations period.

The Board's alleged discriminatory conduct took place on May 22, 1989, while Taxman first brought an action asserting her NJLAD claims by way of the April 29, 1992 complaint. If the applicable limitations period is six years, Taxman's NJLAD claims were timely filed regardless of tolling. If, however, the statutory period is deemed to be two years, the NJLAD claims can survive only if the statute of limitations was tolled by the filing of the charge with the EEOC.

■ Because the NJLAD does not specify a statute of limitations, courts have been left to choose between New Jersey's two general statutes of limitations applicable to tort actions. N.J.S.A. 2A:14–2 provides a two-year limitations period for actions arising from tortious injury to the *person* of another, while N.J.S.A. 2A:14–1 provides a six-year statute of limitations for actions claiming tortious injury to the *rights* of another. Because the New Jersey Supreme Court has not addressed the issue of the appropriate statute of limitations in NJLAD actions, the court must grapple with the task of predicting how that court would rule. *Blum v. Witco Chemical Corp.,* 829 F.2d 367, 376 (3d Cir.1987). In the absence of a pronouncement by the state's highest court, this court may look to the decisions of intermediate appellate courts. *Aetna Casualty & Surety Co. v. Farrell,* 855 F.2d 146, 148 (3d Cir.1988). The decisions of these courts should be accorded proper regard and are presumptive evidence of state law. *Commercial Union Ins. Co. v. Bituminous Casualty Corp.,* 851 F.2d 98, 100 (3d Cir.1988). The resolution of the issue of how the Supreme Court would rule is both delicate and imprecise; indeed, even the courts of this district are split as to whether the two-year or six-year limitations period would be applied.

The first case to rule on the issue was *Leese v. Doe,* 182 N.J.Super. 318, 440 A.2d 1166 (Law Div.1981). Although not an Appellate Division case, *Leese* set the stage

1. In recognition of their common jurisdiction over certain employment discrimination claims, the EEOC and the NJDCR have a Worksharing Agreement pursuant to which each agency recognizes the other as its agent for the purpose of receiving charges. *See* Workshare Agreement, Taxman's Br. in Opp. to Motion to Dismiss, Exh. B, section II, paragraph a. The Agreement additionally states that the NJDCR waives its right under section 706(c) and (d) of Title VII, 42 U.S.C. § 2000e–5(c) and (d), to have an exclusive right to resolve the Title VII claim within sixty days.

for subsequent debate. Relying on *Davis v. United States Steel Supply*, 581 F.2d 335 (3d Cir.1978), a Third Circuit case applying a six-year statute of limitations to an employment discrimination claim brought under 42 U.S.C. § 1981, *Leese* applied a six-year statute of limitations to NJLAD claims. The court stated that

> [t]he present case, though brought under our Civil Rights Act, also involves employment discrimination and the injury to plaintiff's property rights which allegedly resulted. As such, the six-year limitation of N.J.S.A. 2A:14–1 governs the timeliness of plaintiff's action.

*Leese*, 182 N.J.Super. at 321, 440 A.2d 1166. Thus, the court in *Leese* agreed with the Third Circuit's characterization of employment discrimination as an injury to property rights and therefore applied the statute of limitations applicable to tortious injury to property rights.

The Appellate Division first considered the issue in *Nolan v. Otis Elevator Co.*, 197 N.J.Super. 468, 485 A.2d 312 (App.Div. 1984), *rev'd on other grounds*, 102 N.J. 30, 505 A.2d 580, *cert. denied*, 479 U.S. 820, 107 S.Ct. 84, 93 L.Ed.2d 38 (1986). The court in *Nolan* adopted the six-year statute of limitations of N.J.S.A. 2A:14–1 without any analysis of the issue. *See Nolan*, 197 N.J.Super. at 473–74, 485 A.2d 312.[2]

In 1987, however, the Supreme Court in *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987), affirmed the Third Circuit which, when *Goodman* was before it, had overruled *Davis*. The Court in *Goodman* held that the appropriate limitations period for employment discrimination claims under § 1981 is that applied to state personal injury actions. 482 U.S. at 661–62, 107 S.Ct. at 2621. In reaching this conclusion, the Court relied in large part on its prior analysis relating to § 1983 claims in *Wil-*

*son v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), in which it found § 1983 claims most analogous to personal injury claims. It rejected the argument that § 1981 claims are unique among civil rights actions in that they deal more with economic rights, particularly the right to contract. *Id.* Rather, the Court opined, the economic nature of § 1981 claims does not negate or dilute the statute's primary purpose of preventing racial discrimination, the nature of which is clearly akin to personal injury. *Id.* The clear mandate of *Goodman* was that employment discrimination claims brought under § 1981 were to be subject to the state limitations period for personal injury actions.

The first case in this district to consider the statute of limitations issue post-*Goodman* was *White v. Johnson & Johnson Prods., Inc.*, 712 F.Supp. 33 (D.N.J.1989). Recognizing its obligation to determine how the New Jersey Supreme Court would decide the issue, the court in *White* set forth the theretofore unquestioned law of New Jersey as embodied in *Leese*.[3] Noting *Leese*'s use of *Davis*, and the subsequent change in Third Circuit law mandated by the Supreme Court's opinion in *Goodman*, the Hon. Alfred M. Wolin concluded that the reasoning of *Leese* had been undercut and that the New Jersey Supreme Court would, if presented with the question, follow the *reasoning*, but not result, of *Leese* and liken the statute of limitations for NJLAD claims to that applied to § 1981 claims, now two years.

> The court can only assume that if the issue were before the highest court of New Jersey, that court would do as the Superior Court did in *Leese* and look to federal law for guidance, but would find the current federal guidance (in contrast to what existed at the time of *Leese*) to favor application of the [two-year] per-

---

**2.** The district court in *Skadegaard v. Farrell*, 578 F.Supp. 1209, 1214 (D.N.J.1984), also agreed with *Leese*'s reliance on *Davis* and applied New Jersey's six-year statute of limitations to employment discrimination claims. Inasmuch as *Skadegaard* is not New Jersey state precedent, and preceded later developments in the federal law, it is not material to this court's analysis.

**3.** The court in *White* did not make reference to *Nolan*, and apparently that case was never brought to the court's attention. *See White*, 712 F.Supp. at 37 ("[t]he only New Jersey state case cited by the parties that has addressed the issue is *Leese v. Doe*. . . .").

sonal injury statute of limitations to NJLAD claims. *White*, 712 F.Supp. at 38. Thus, *White*'s conclusion that New Jersey would adopt a two-year statute of limitations was based on an assumption that *Leese* based its ruling largely, if not entirely, on federal law and that the New Jersey Supreme Court would follow suit.

Less than one month after *White*'s prediction, however, the Appellate Division endorsed a six-year statute of limitations in *Fisher v. Quaker Oats Co.*, 233 N.J.Super. 319, 559 A.2d 1 (App.Div.), *certification denied*, 117 N.J. 628, 569 A.2d 1331 (1989). The issue at bar in *Fisher* was whether the limitations period for age discrimination claims under the NJLAD was preempted by the shorter limitations period of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq. Fisher*, 233 N.J.Super. at 322, 559 A.2d 1. In determining that it was not, the Appellate Division accepted the conclusion reached in *Nolan* that the relevant limitations period for NJLAD claims is six years. *Id.* at 320, 559 A.2d 1. The Board, however, is quick to point out that the statute of limitations issue itself was not litigated in *Fisher* and tells this court that the parties in *Fisher*, relying on *Leese*, had stipulated that the applicable state limitations period was six years. *Fisher*, the Board concludes, should not, therefore, be considered persuasive precedent in favor of a six-year limitations period.

I disagree. The entire controversy at issue in *Fisher* revolved around a difference in the limitations period of state and federal age discrimination law; without a difference, preemption, which was the issue, would not have been at issue at all. The ADEA follows the two-year limitations period set forth in 29 U.S.C. § 255. *See* 29 U.S.C. § 626(e)(1). The *Fisher* court's citation to *Nolan* for the proposition that NJLAD claims enjoy a six-year statute of limitations under state law, far from gratuitous, was essential to the court's holding. Irrespective of the existence of a stipulation by the parties, the Appellate Division's willingness to decide the statute of limitations preemption issue is a clear sign of

that court's conviction that NJLAD claims are subject to a six-year limitations period rather than a two-year limitations period. The Board's blithe attempt to eviscerate *Fisher* cannot withstand scrutiny.

Following *White* and *Fisher*, three judges of this district have spoken on the NJLAD statute of limitations issue. The Hon. Clarkson S. Fisher, in *Pachilio v. Union Carbide*, 1990 WL 4630 (D.N.J. 1990), followed Judge Wolin's analysis in *White* and applied a two-year statute of limitations to the NJLAD claims in that case. In *Carrington v. RCA Global Communications, Inc.*, 762 F.Supp. 632 (D.N.J. 1991), however, the Hon. Dickinson R. Debevoise took the opposite stance, finding that NJLAD claims should be subject to a six-year statute of limitations. He noted that no New Jersey case has applied a two-year limitations period and found "little reason to believe that New Jersey courts will exhibit slavish devotion to federal law in interpreting the NJLAD." *Id.* at 644. Drawing on principles of state sovereignty, Judge Debevoise accorded great weight to the New Jersey state cases deciding in favor of a six-year limitations period. *Id.* at 642–44. Finding the reasoning of *White* unpersuasive, he eschewed its result and applied a six year limitation period. Finally, in *Miller v. Beneficial Management Corp.*, 776 F.Supp. 936 (D.N.J.1991), the Hon. Alfred J. Lechner, Jr. concurred with Judge Debevoise and followed his analysis to the same conclusion.

Most recently, the Law Division has considered the statute of limitations issue with respect to NJLAD claims in *Lautenslager v. Supermarkets General Corp.*, 252 N.J.Super. 660, 600 A.2d 525 (Law Div. 1991). After discussing the evolution of the case law in this area, including *Leese, Davis, Goodman, Nolan,* and *White,* the court recognized its dilemma:

> [T]he *Leese* case, a law division case, and the *Skadegaard* case, a federal district court case, each of which held that the six year statute was applicable, was [sic] based on a federal circuit case subsequently reversed by the Supreme Court. The *White* case also a federal district

court case, concluded that the two year statute is applicable and two appellate division cases have stated in dicta, and without explanation, that the six year statute is applicable.

*Lautenslager*, 252 N.J.Super. at 665, 600 A.2d 525. Finding a split in authority, the court undertook an independent analysis of the statute of limitations question. Looking to the common law concepts of "action on the case" and "trespass *vi et armis*," the court attempted to trace the roots of New Jersey's two tort statutes of limitations, N.J.S.A. 2A:14–1 and N.J.S.A. 2A:14–2. The court concluded that an action of trespass was historically to redress injuries caused by the direct application of force, and that the language of N.J.S.A. 2A:14–2, the two-year statute, was intended to apply to this type of action. *Id.* The court also concluded that the six-year limitation of N.J.S.A. 2A:14–1 was intended to cover indirect injuries in the nature of actions on the case. *Id.* Finding that employment discrimination is an indirect injury consisting of "the deprivation of the right to employment," and therefore most akin to a common law action on the case, the court determined that the six-year statute of limitations of N.J.S.A. 2A:14–1 should apply to NJLAD claims. *Id.* at 669, 600 A.2d 525. Although the court did not so state explicitly, it in effect rejected the reasoning that the Supreme Court of the United States employed in *Wilson* and *Goodman* to apply state personal injury statutes of limitations to employment discrimination claims brought under § 1981.

Thus, the question which presents itself, reduced to its simplest form, is this: Would the New Jersey Supreme Court, when faced with the issue of which statute of limitations to apply to NJLAD claims, follow the change in federal law and adopt a two-year statute of limitations as the Supreme Court did for § 1981 claims in *Goodman,* or continue to use the six-year statute that has been applied by lower New Jersey courts by making an assessment of the nature of employment discrimination claims independent of federal case law? In rendering a decision as to the proper statute of limitations, it must be remembered

that it is not the place of this court to indulge its preferences as to how the state's common law ought to develop, *Adams v. Madison Realty & Development, Inc.,* 853 F.2d 163, 168 (3d Cir.1988), but rather to apply the substantive law of the state, including the statutes of limitations. *McGowan v. University of Scranton,* 759 F.2d 287, 290 (3d Cir.1985).

With this caveat in mind, the choice is clear. No New Jersey case has held that NJLAD claims are subject to a two-year statute of limitations; every New Jersey case to consider the issue, whether directly or implicitly, whether with exhaustive analysis or bluntly stated, has applied a six-year statute of limitations. *See, Fisher v. Quaker Oats Co.,* 233 N.J.Super. 319, 559 A.2d 1 (App.Div.), *certification denied,* 117 N.J. 628, 569 A.2d 1331 (1989); *Nolan v. Otis Elevator Co.,* 197 N.J.Super. 468, 485 A.2d 312 (App.Div.1984), *rev'd on other grounds,* 102 N.J. 30, 505 A.2d 580, *cert. denied,* 479 U.S. 820, 107 S.Ct. 84, 93 L.Ed.2d 38 (1986); *Lautenslager v. Supermarkets General Corp.,* 252 N.J.Super. 660, 600 A.2d 525 (Law Div.1991); *Leese v. Doe,* 182 N.J.Super. 318, 440 A.2d 1166 (Law Div.1981). Although New Jersey's first statement on the issue, in *Leese,* relied on the prevailing federal law at the time, that court also characterized the employment discrimination claim as an "injury to plaintiff's property rights." *Leese,* 182 N.J.Super. at 321, 440 A.2d 1166. This conclusion was echoed more recently by the Law Division in *Lautenslager,* as that court declined to follow *White* 's analogy to federal law.

Even more persuasive, however, is the fact that the only Appellate Division cases to speak on the subject have applied the six-year limitations period. These decisions are deemed to be *presumptive* evidence of state law. *See Commercial Union Insurance Co. v. Bituminous Casualty Corp.,* 851 F.2d 98, 100 (3d Cir.1988); *White,* 712 F.Supp. at 37. Unless this court is convinced that the New Jersey Supreme Court would rule otherwise, it is bound to follow the decisions of New Jersey's lower appellate courts. I agree with the court in *Car-*

*rington* that there is nothing to indicate that the New Jersey Supreme Court would exhibit a "slavish devotion" to federal law. Quite the contrary, the New Jersey courts have consistently treated employment discrimination as an injury to property rights within the scope of the six-year limitations period of N.J.S.A. 2A:14–1. This court concludes, therefore, that Taxman's NJLAD claims are subject to a six-year statute of limitations and are not time barred.[4]

### IV. Motion for Applicable Legal Standards under Title VII

The Board seeks "a ruling that the evidence in this case will be judged solely by Title VII standards as reflected in *Weber* and *Johnson,* and not the 'strict scrutiny' equal protection analysis of *Croson.*" Def. Br. at 5. Conceding that the litigation is at an early stage, the Board nonetheless attempts to justify its request on the basis of "the substantial expense of developing statistical data and, also, some confusion about the applicability of equal protection cases like [*Croson*]." *Id.* at 2. To say that the ruling requested by the Board would be premature would be an understatement given that discovery is in its early stages and the issues that must be decided are not yet focused. Federal courts must refrain from rendering "such advance expressions of legal judgment upon issues which remain unfocused because they are not pressed before the Court with that clear concreteness provided when a question emerges precisely framed and necessary for decision from a clash of adversary argument exploring every aspect of a multifaced situation embracing conflicting and demanding interests...." *See United States v. Fruehauf,* 365 U.S. 146,

157, 81 S.Ct. 547, 554, 5 L.Ed.2d 476 (1961). In short, the court will not give an advisory opinion as to the legal standards which it may apply in the future, if called on to do so, to yet-to-be gathered evidence.

### V. Relitigation of Taxman's Seniority Rights

#### A. Preclusion

■ The Board argues that the New Jersey Commissioner of Education's determination of Taxman's seniority rights should be dispositive and that relitigation of the issue of seniority rights should be barred under the doctrine of *res judicata* (now referred to as claim preclusion) or collateral estoppel (now referred to as issue preclusion). *See Migra v. Warren City School District Board of Education,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894–95 n. 1, 79 L.Ed.2d 56 (1984) (discussing new terminology). The United States, citing *University of Tennessee v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), counters that state agency determinations which have not been reviewed by a state court are not to be given preclusive effect in a Title VII action.

The Supreme Court in *Elliott* began its preclusion analysis with 28 U.S.C. § 1738, which governs the preclusive effects of state court judgments.[5] Finding that § 1738, by its terms, applies only to judgments and records of state courts and not to unreviewed state administrative fact-findings, the Court framed the question before it as whether it should, as it had done before, fashion a federal common law rule of preclusion in the absence of a statute. *Elliott,* 478 U.S. at 794, 106 S.Ct. at

---

4. As a practical matter, applying a six year statute of limitations to NJLAD claims while their federal counterpart, section 1981 claims, are subject to a two year limitations period may yield incongruent and untoward results in employment discrimination cases in federal court. Plaintiffs whose federal law cause of action for employment discrimination has long since lapsed may yet gain a federal forum for their employment discrimination claims by the fortuity of diversity of citizenship. Nevertheless, this court must make its assessment as to how the New Jersey Supreme Court would rule on the state of the law as it now exists.

Because the applicable limitations period is six years, the issue of tolling need not be addressed.

5. The statute provides in pertinent part:

The records and judicial proceedings of any court of any ... State, Territory, or Possession ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

28 U.S.C. § 1738.

3223–24; *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 470 n. 7, 102 S.Ct. 1883, 1891 n. 7, 72 L.Ed.2d 262 (1982). In considering the question with regard to Title VII claims, the Court noted that Title VII contains an express mandate that the EEOC give "substantial weight to final findings and orders made by State or local authorities in proceedings commenced under State or local [employment discrimination] law." *Elliott*, 478 U.S. at 795, 106 S.Ct. at 3224 (quoting 42 U.S.C. § 2000e–5(b)). Because this provision would be senseless if state agency determinations were to be accorded full faith and credit in Title VII actions, and because the legislative history of Title VII indicates congressional intent to ensure a Title VII plaintiff a trial *de novo* on Title VII claims, the Court concluded that "Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims." *Elliott*, 478 U.S. at 796, 106 S.Ct. at 3225.

The Board does not dispute that *Elliott* stands for the proposition that ordinary preclusion principles do not apply to administrative determinations in Title VII actions. Rather, it attempts to distinguish *Elliott*'s holding, arguing that it applies "only when the prior administrative adjudication involves civil rights-type issues within the EEOC's expertise." Def. Reply Br. at 3. In support of this argument, the Board cites *Elliott* and states that it is unaware of any authority freeing the EEOC from preclusion where discrimination was not an issue in the administrative proceeding. The Board's reasoning is flawed for several reasons.

First, the proposition for which the Board cites *Elliott*, i.e. that the preclusive effect of state administrative determinations applies only with respect to civil rights-type issues, is nowhere to be found in *Elliott*. The holding in that case is plainly stated and straightforward, not narrowly confined as the Board's reading suggests. There is not so much as a hint in *Elliott* that administrative determinations *would* be given preclusive effect if not of a certain type. The Board's failure to cite

any authority on this point is, indeed, telling.

Moreover, this unconstrained reading of *Elliott* is supported by the case law following *Elliott*. *See, e.g., McInnes v. California*, 943 F.2d 1088, 1093 (9th Cir.1991) ("The clear teaching of *Elliott* is that in a Title VII action a prior state decision enjoys issue preclusive effect only if rendered or reviewed by a court."); *DeCintio v. Westchester County Medical Center*, 821 F.2d 111, 114–15 & 116 n. 11 (2d Cir.) (giving no preclusive effect to state administrative determinations not reviewed by a court with respect to Title VII claims), *cert. denied*, 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987).

There appears to be only one circuit case in which the issue of whether administrative findings unrelated to civil rights-type issues should be given preclusive effect in a Title VII action was considered, and even then the issue was only indirectly addressed. In *Delgado v. Lockheed–Georgia Co.*, the Eleventh Circuit was faced with the question of whether to extend *Elliott*'s holding to ADEA claims. 815 F.2d 641, 646 (11th Cir.1987). The plaintiffs in *Delgado*, who had been terminated by Lockheed, filed claims for unemployment benefits with the Georgia Employment Security Agency (GESA). Benefits were denied because the GESA found that the employees had engaged in willful misconduct involving falsification of employer records. In considering whether the GESA's findings should have preclusive effect in the subsequent ADEA action, the court used as its starting point *Elliott*'s holding that unreviewed state agency determinations are not given preclusive effect in Title VII actions, assuming that if the case at bar had been a Title VII action, *Elliott* would govern and the GESA's findings would not be given preclusive effect. The court found persuasive the EEOC's likening of the ADEA to Title VII with regard to administrative preclusion, but found it "unnecessary to determine whether the finding of a state administrative agency should be denied preclusive effects in all cases," because even if preclusion could be applied, it would be inappropriate under the circumstances

presented because plaintiffs did not have an adequate opportunity to litigate their claims. *Id.* at 646–47. Implicit in the court's opinion, however, is the conclusion that had the action been one under Title VII, the GESA's findings, unrelated to civil rights though they were, would have been denied preclusive effect under *Elliott.*

Thus, it is clear from a plain reading of *Elliott,* from an examination of the policies extolled by the Court in that case, and from the case law after *Elliott* that the New Jersey agency's findings should not be given preclusive effect in this Title VII case.

### B. Abstention

■ The Board also urges this court to abstain under both the *Burford* and *Pullman* abstention doctrines. The court need not tarry long on the abstention question, as neither theory is applicable here. First, it bears mention that abstention is "an extraordinary and narrow exception to the district court's duty to adjudicate a controversy properly before it, justified only in the exceptional circumstances where resort to state proceedings clearly serves an important countervailing interest." *Biegenwald v. Fauver,* 882 F.2d 748, 750 (3d Cir. 1989) (quoting *United Services Automobile Ass'n v. Muir,* 792 F.2d 356, 360 (3d Cir.1986), *cert. denied,* 479 U.S. 1031, 107 S.Ct. 875, 93 L.Ed.2d 830 (1987)). Abstention is to be the exception, rather than the rule. *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976).

■ *Burford* abstention [6] is appropriate where a state creates a complex regulatory scheme that is supervised by the state courts and central to state interests and federal review of state law questions will disrupt a state's efforts "to establish a coherent policy with respect to a matter of substantial public concern." *Colorado River,* 424 U.S. at 814, 96 S.Ct. at 1245. The presence of federal law issues, however, though not dispositive, will weigh

against abstention. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 26, 103 S.Ct. 927, 942, 74 L.Ed.2d 765 (1983); *Lac D'Amiante Du Quebec, Ltee v. American Home Assurance Co.,* 864 F.2d 1033, 1044 (3d Cir.1988); *Izzo v. River Edge,* 843 F.2d 765, 768 (3d Cir.1988). The Third Circuit in *Izzo* noted that in considering *Burford* abstention in a case with a federal question, three criteria should be present: (1) the subject of the regulation be of significant and special concern to the state; (2) the state regulatory scheme be detailed and complex; and (3) the federal issues be unresolvable without requiring the district court to immerse itself in the technicalities of the state's scheme. *Izzo,* 843 F.2d at 769. Even assuming that the seniority rights of public teachers is of some significant and special concern to the state, the state's regulatory scheme is not so complex and highly technical that it would counsel against a federal court's involvement to resolve a federal concern. Furthermore, the Title VII claims at issue here may well be resolvable without the court ever entangling itself in the seniority rights issue at all. *Burford* abstention is wholly inappropriate and must be rejected out of hand.

■ *Pullman* abstention is also clearly inapplicable. In order for *Pullman* abstention to apply, three special circumstances must be present: (1) uncertain issues of state law underlying the federal constitutional claims brought in federal court; (2) state law issues amenable to a state court interpretation that would obviate the need for, or substantially narrow, the scope of the adjudication of the constitutional claims; and (3) disruption of important state policies by a federal court's erroneous construction of state law. *Chez Sez III Corp. v. Union,* 945 F.2d 628, 631 (3d Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1265, 117 L.Ed.2d 493 (1992). If all three circumstances are present, the district court must determine whether to exer-

---

**6.** *Burford* abstention hails from the Supreme Court's decision in *Burford v. Sun Oil Co.,* 319

U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

cise its discretion in favor of abstention. *Id.*

The court need not make any discretionary determination here, for the facts of the case do not present even a colorable case for *Pullman* abstention. First, and fatally, there is no *constitutional* issue in this case. Although the Board recites the applicable law as relating to a "substantial federal question," a mere federal question is insufficient under *Pullman* and subsequent cases invoking the doctrine. *See Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 498–501, 61 S.Ct. 643, 643–45, 85 L.Ed. 971 (1941) (discussing plaintiffs' "substantial constitutional claim"); *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 236, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984) (abstention appropriate where unsettled state law questions must be resolved before "a substantial federal constitutional question can be decided")[7]; *Colorado River*, 424 U.S. at 814, 96 S.Ct. at 1244 (abstention appropriate "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of state law") (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959)); *Chez Sez III*, 945 F.2d at 631 ("when a federal court is presented with both a federal constitutional issue ..."); *Biegenwald v. Fauver*, 882 F.2d 748, 750 (3d Cir.1989) (federal constitutional claim). Because this action does not involve a federal constitutional claim, *Pullman* abstention is inapplicable.[8]

## VI. Conclusion

This court holds that Taxman's NJLAD claims are not time barred because the appropriate limitations period for such claims is six years. The Board's motion for a ruling on the legal standards to be applied is denied, as is its motion for an order barring relitigation of Taxman's seniority rights under New Jersey law.

---

7. *Hawaii Housing Authority* is the sole case the Board cites in support of its *Pullman* abstention argument. While the Board recites the *Hawaii Housing Authority* Court's description of the holding in *Pullman*, it omits, apparently conveniently, the word "constitutional," the crux of *Pullman* abstention. *Hawaii Housing Authority*, of course, involved the Fifth and Fourteenth Amendments. 467 U.S. at 231, 104 S.Ct. at 2324.

8. Both the Supreme Court and commentators have on several occasions suggested that federal courts should be especially loathe to abstain in civil rights actions. *See, e.g., Mayor of Philadelphia v. Educational Equality League*, 415 U.S. 605, 628, 94 S.Ct. 1323, 1337, 39 L.Ed.2d 630 (1974) ("there is substantial authority for the proposition that abstention is not favored in an equal protection, civil rights case brought as was this one under 42 U.S.C. § 1983 and 28 U.S.C. § 1343"); *McNeese v. Board of Education*, 373 U.S. 668, 673–74, 83 S.Ct. 1433, 1436–37, 10 L.Ed.2d 622 (1963) (declining abstention in § 1983 action because federal court is the primary tribunal "for enforcement of federal rights"); *Harrison v. NAACP*, 360 U.S. 167, 180, 79 S.Ct. 1025, 1032, 3 L.Ed.2d 1152 (1959) (Douglas, J., dissenting) (calling abstention in a Civil Rights Act case "the most inappropriate one of all in which to withhold the hand of the Federal District Court"); 17A Charles A. Wright et al., *Federal Practice and Procedure* § 4242 (1988). Because this case is otherwise inappropriate for abstention, the court need not determine whether abstention would be unavailable merely by virtue of the civil rights nature of the claims.