Steven P. MITCHELL, Plaintiff,

v.

VILLAGE SUPER MARKET,
INC., et al., Defendants.

Civil No. 96–1257(SMO).

United States District Court,
D. New Jersey.

May 20, 1996.

Rona Zucker Kaplan, Cooper Perskie April Niedelman Wagenheim & Levenson, Atlantic City, NJ, for Plaintiff Steven P. Mitchell.

Jack Gorny, Horn, Goldberg, Gorny, Daniels, Paarz, Plackter & Weiss, P.C., Atlantic City, NJ, for Defendants Village Super Market, Inc., Victor D'Anna and Demir Cakin.

Howard S. Simonoff, Tomar, Simonoff, Adourian & O'Brien, Haddonfield, NJ, for Defendant United Food and Commercial Workers International Union, Local 1358.

## OPINION

ROSEN, United States Magistrate Judge.

### I. INTRODUCTION

Presently before the court is the motion of Rona Zucker Kaplan, Esquire, counsel for the plaintiff, to remand to the Superior Court of New Jersey pursuant to 28 U.S.C. § 1447(c).[1] After careful consideration of the

---

1. Also before the court is the plaintiff's application to amend the complaint. The proposed amendment deletes a single phrase from the complaint—which counsel for the plaintiff as-

parties' submissions, and after further consideration of the oral argument conducted on the record on May 7, 1996, and for the reasons noted below, the motion shall be *granted.*

## II. FACTUAL AND PROCEDURAL BACKGROUND

On approximately February 20, 1996, the plaintiff filed a complaint in the Superior Court of New Jersey alleging that Defendants Village Super Market, Inc., trading as Shop Rite Markets (hereinafter "the Market"), Victor D'Anna, Vice President of Human Resources/Labor Relations for Shop Rite, Demir Cakin, Director of Loss Prevention and Security for the Northern and Southern New Jersey Regions of Shop Rite, United Food and Commercial Workers International Union, Local 1358 (hereinafter "the Union"), Jane and John Doe employees of Shop Rite and members of the Union unlawfully discriminated against him on the basis of his race. The plaintiff makes the following allegations which, for the purposes of the present motion, this court shall take as true.[2] The Market hired Plaintiff Steven Mitchell in 1982. (Complaint ¶ 7). Shortly after obtaining employment with the Market, the plaintiff became a member of the Union. (*Id.*). In June of 1982, the Market assigned the plaintiff to the security department as a plainclothes officer, and, in 1988, the Market promoted the plaintiff to Loss Prevention Supervisor for the Southern Region. (*Id.* at ¶ 8). From 1982 to 1995, the plaintiff was a member of the Union, until, in April 1995, the Union terminated the plaintiff's membership. Moreover, following a medical leave of absence, the plaintiff was demoted from his position as Loss Prevention Supervisor in June 1995.[3] The plaintiff claims that each of the aforementioned events resulted from disparate treatment due to his race in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5–1 *et seq.* (hereinafter "NJLAD"). In Count One of the complaint, the plaintiff requests damages for the defendants' alleged violation of NJLAD. Count Two of the complaint alleges that the Union "conspired with, aided, abetted and assisted its co-defendants in their acts of unlawful discrimination by terminating plaintiff's union membership[,]" and "failed and refused to remedy its wrong or thoroughly investigate the matter." (Complaint, ¶¶ 52–53). The plaintiff alleges that his membership termination was indicative of the defendants' continuous discriminatory application of general rules and regulations of the Market and the Union.[4]

On March 15, 1996, the defendants removed the action to federal court based upon "arising under" jurisdiction pursuant to 28 U.S.C. § 1331. Specifically, the defendants contend that the plaintiff's complaint asserts a cause of action which has been preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, (hereinafter "LMRA"), and Title II of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 411, *et seq.* (hereinafter "LMRDA"). (Union's Br. at 2). The defendants reason that the plaintiff's claims require interpretation of the collective bargaining agreement and the plaintiff's rights thereunder in order to decide whether the plaintiff's rights were violated. Such an interpretive process renders the collective bargaining agreement and the plaintiff's relationship to it inextricably

---

serts was inadvertently included in the complaint. (Certification of Rona Zucker Kaplan in Support of the Plaintiff's Motion to Remand, ¶ 8) (hereinafter "Kaplan Cert."). The plaintiff requests that the phrase "and federal Constitutional law" be stricken from paragraph 50. The defendants have not opposed the application either in writing or during oral argument. Consequently, the plaintiff's application shall be granted, and any references to the complaint herein shall be to the complaint as amended. (*See* Kaplan Cert. Exhibit A).

**2.** *Carrington v. RCA Global Communications, Inc.,* 762 F.Supp. 632, 635 (D.N.J.1991).

**3.** In their answer, the defendants assert that the plaintiff has been reinstated to his former position.

**4.** Conversely, the defendants contend that under the terms of the collective bargaining agreement, the plaintiff's security position status required the plaintiff's termination. However, the defendants have, for the purposes of this motion, accepted the facts as set forth in the complaint. (Union Reply Br. at 2).

entwined. Therefore, the defendants argue, the plaintiff asserts a "classic cause of action pursuant to Section 301 of the Labor Management Relations Act." (Union Reply Br. at 3). On March 26, the plaintiff moved to remand the case contending that although he could have asserted a federal cause of action, he intentionally limited his request for recovery to the NJLAD and, consequently, should be permitted to proceed in state court.

## III. DISCUSSION

■ Following removal to federal court, a plaintiff may obtain a remand to state court "[if] at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. 1447(c). The defendants, alleging that federal question jurisdiction exists, removed the action to this court pursuant to 28 U.S.C. § 1441.[5] The alleged basis for original jurisdiction is federal question or "arising under" jurisdiction. 28 U.S.C. 1441(b). It is well settled that "removal statutes are to be 'strictly construed against removal and all doubts should be resolved in favor of remand.'" *Angus v. Shiley, Inc.*, 989 F.2d 142, 145 (3d Cir.1993) (quoting *Boyer v. Snap–On Tools Corp.*, 913 F.2d 108, 111 (3d Cir.1990), *cert. denied*, 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991)), *see also Steel Valley Author. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir.1987), *cert. dismissed sub nom American Standard, Inc. v. Steel Valley Authority*, 484 U.S. 1021, 108 S.Ct. 739, 98 L.Ed.2d 756 (1988). Although courts must focus on the plaintiff's complaint at the time the petition for removal was filed, courts have a continuing obligation to monitor jurisdiction after removal. *Steel Valley*, 809 F.2d at 1010.

■ The plaintiff seeks to remand, arguing that pursuant to the well-pleaded complaint rule federal jurisdiction must be found on the face of the plaintiff's "well-pleaded complaint." A defendant may remove only those state court actions that originally could have been brought in federal court. According to the well-pleaded complaint rule, "where a plaintiff's complaint on its face states only state law cases of action, the fact that issues of federal law may be involved, as in the nature of a defense, will not suffice to create federal question jurisdiction." *Carrington v. RCA Global Communications, Inc.*, 762 F.Supp. 632, 636 (D.N.J.1991). The Supreme Court has recognized that this rule was designed to make the plaintiff "master of the claim." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). Further, the Court has recognized that a case may not be removed to federal court on the basis of a federal defense, "including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *See Id.* at 393, 107 S.Ct. at 2430 (citing *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 12, 103 S.Ct. 2841, 2847–48, 77 L.Ed.2d 420 (1983)).

■ However, the defendants rely upon the "independent corollary" to the well-pleaded complaint rule: the complete preemption doctrine. The complete preemption doctrine applies in those circumstances in which "the pre-emptive force of a [federal] statute is so 'extraordinary' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.' ... Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.* at 392, 107 S.Ct. at 2430 (quoting *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 61, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987)); *see also, Spellman v. Meridian Bank*, —— F.3d ——, ———–———, 1995 WL 764548, *3–4 (3d Cir.

---

**5.** 28 U.S.C. § 1441(a) states in pertinent part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States[.]" Further, 28 U.S.C. § 1441(b) permits removal without regard to the citizenship of the parties in "any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States[.]"

1995); *Kozar v. AT & T*, 923 F.Supp. 67 (D.N.J.1996).

The Third Circuit, recognizing the "very limited area in which a federal court in a case removed from a state court is authorized to recharacterize what purports to be a state law claim as a claim arising under a federal statute" (*Spellman*, at ——, 1995 WL 764548, at *3 (quoting *Railway Labor Exec. Ass'n v. Pittsburgh & Lake Erie R. Co.*, 858 F.2d 936, 942 (3d Cir.1988))), has adopted a two-pronged test by which a federal court may determine whether it is authorized to assert complete preemption jurisdiction:

> First the court must determine that 'the statute relied upon by the defendant as preemptive contains civil enforcement provisions within the scope of which the plaintiff's state claim falls.' [*Railway Labor*, 858 F.2d] at 942 (citing *Franchise Tax Board*, 463 U.S. at 24, 26, 103 S.Ct. at 2854, 2855). Second, the court must find 'a clear indication of a Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law.' *Id.*

*Spellman*, at ——, 1995 WL 764548, at *3.

In *Carrington v. RCA Global Communications, Inc.*, 762 F.Supp. 632 (D.N.J.1991), Judge Debevoise had occasion to address the application of the complete preemption doctrine in a case very similar to the case before this court. The *Carrington* plaintiff brought an action against his former employer and his former union alleging that the defendants discriminated against him in violation of the NJLAD when they terminated his employment, and the defendant union discriminated against him "by failing to advocate the plaintiff's position with the RCA management, failing to advise plaintiff of his grievance and appeal rights under the collective bargaining agreement, and otherwise taking a passive role in connection with plaintiff's discharge," again in violation of the NJLAD. *Id.* at 635. The defendants moved to remand the case arguing that § 301 of the LMRA completely preempted the plaintiff's claims. The court held that the NJLAD claims were not completely preempted. Providing a full summary of Supreme Court precedent in the area of labor law and complete preemption, the court explained that the goal of obtaining a "uniform federal interpretation" of collective bargaining agreements requires "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement" to be resolved under federal law, whether those cases sounded in contract or tort law. *Id.* at 640 (quoting *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 211, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206 (1985)). However, the Supreme Court further held that:

> not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is preempted by § 301 or other provisions of federal labor law. Section 301 on its face says nothing about the substance of what private parties may agree to in a labor contract. Nor is there any suggestion that Congress, in adopting § 301, wished to give the substantive provisions of private agreements the force of federal law, ousting any inconsistent state regulation. *Such a rule of law would delegate to unions and unionized employers the power to exempt themselves from whatever state labor standards they disfavored.* Clearly, § 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law. In extending the pre-emptive effect of § 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.

*Lueck*, 471 U.S. at 211–212, 105 S.Ct. at 1911–1912 (emphasis added); *see also Carrington*, 762 F.Supp. at 640. Consequently, the Court has found that only those claims which are " 'inextricably intertwined with considerations of the terms of the labor contract' are preempted by § 301." *Id.* (quoting *Lueck*, 471 U.S. at 213, 105 S.Ct. at 1912).

■ The defendants in the case before this court assert that "implicit in all of the allegations against the Union on the face of the Complaint is that the Union owed a duty to the plaintiff, which could only be the case if he was represented by the Union in the

context of a collective bargaining relationship, and that the Union breached its duty." (Union's Reply Br. at 4). However, the court in *Carrington*, faced with the identical argument, relied upon *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), and found that the claim arose soundly under the NJLAD, and was not preempted by § 301. The court explained:

> In *Lingle* the Court found that a retaliatory discharge claim, derived from a state statute, was not preempted by § 301[.] ... While the Court agreed that 'the state-law analysis might well involve attention to the same factual considerations as the contractual determination of whether Lingle was fired for just cause,' the Court disagreed that 'such parallelism renders the state law analysis dependent upon the contractual analysis.' ... Instead, the Court found that the state law claim was independent of the collective bargaining agreement because the claim turned on questions 'pertaining to the conduct of the employee and the conduct and motivation of the employer,' neither of which 'requires a court to interpret any terms of a collective-bargaining agreement.'

*Id.* at 640 (quoting *Lingle*, 486 U.S. at 407, 108 S.Ct. at 1883). Finally, the Supreme Court in *Lingle* specifically recognized that section 301 does not preempt state anti-discrimination laws, "even though a suit under these laws, like a suit alleging retaliatory discharge, requires a state court to determine whether just cause existed to justify the discharge." *Id.* at 412, 108 S.Ct. at 1885. The Court concluded that:

> The operation of the anti-discrimination laws does ... illustrate the relevant point for § 301 pre-emption analysis that the mere fact that a broad contractual protection against discriminatory—or retaliatory—discharge may provide a remedy for conduct that coincidentally violates state law does not make the existence or the contours of the state-law violation depen-

dent upon the terms of the private contract.

*Id.; see also Carrington*, 762 F.Supp. at 640–41. The defendants in the present case have argued only that there is a collective bargaining agreement, and thus its interpretation is paramount. They have not alleged that the terms of the agreement provide remedy for the wrongs which the plaintiff asserts. Consequently, the reasoning of *Lingle, Lueck,* and *Carrington* apply *a fortiori*. Indeed, the *Carrington* court also noted that "courts have *uniformly* held that state anti-discrimination laws are not preempted by § 301 of the LMRA because the right not to be discriminated against 'is defined and enforced under state law without reference to the terms of any collective bargaining agreement,' even where the labor contract itself prohibits discrimination." 762 F.Supp. at 641 (quoting *Ackerman v. Western Electric Co.*, 860 F.2d 1514, 1517 (9th Cir.1988)); *see also, Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743, 747 (9th Cir.1993) (because the right to be free from discrimination is "nonnegotiable" and "cannot be removed by private contract", the collective bargaining agreement "neither created the right ... nor can it remove or alter that right"). Thus, the District of New Jersey has specifically recognized that the NJLAD confers nonnegotiable rights upon the plaintiff which rights exist independent of the collective bargaining agreement and cannot be altered or waived through it. Thus, this court cannot exercise jurisdiction over the plaintiff's complaint which relies upon the New Jersey Law Against Discrimination for redress of the plaintiff's alleged wrongs.[6]

Defendants attempt to take this lawsuit out of the realm of discrimination into a federal cause of action for violation of the terms of the collective bargaining agreement. In its reply brief, the Union argues that reliance upon preemption and the *Lingle, Lueck* line of cases is not necessary as the plaintiff's complaint, on its face, presents a "claim against the Union for breach of its duty to fairly represent plaintiff and the pleading in Count II is nowhere limited in

---

**6.** The defendants' argument that the plaintiff's claim is preempted by the LMRDA is similarly unpersuasive. (*See* Union Reply Br. at 8–9).

any way to the New Jersey Law Against Discrimination." (Union's Reply Br. at 6). This court is not persuaded by the Union's argument for two reasons. First, the plaintiff does limit Count II to a claim under New Jersey state law by incorporating by reference all of the earlier paragraphs of the complaint. (Complaint ¶ 51). Second, and more importantly, the complaint does not state a claim for breach of the Union's duty to fairly represent the plaintiff. Rather, the reference to a potential breach of the duty to represent contained within paragraph 16 of the complaint arose in the context of a chronological description of past events. Paragraph 16 contains the sole reference to the Union's representation of the plaintiff, stating:

> On May 25, 1995, Richard L. Press, Esquire, on behalf of Mitchell, wrote to [Defendant] D'Anna and Irvin R. String, President, UFCW–AFL–CIO, Local No. 1358 and told them, among other things, that he was investigating claims by Mitchell of racial discrimination and unfair representation arising out of his dismissal from the Union on April 11, 1995 as well as disparate treatment by Shop Rite prior to that date.

(Complaint ¶ 16). This paragraph appears in the complaint between several paragraphs describing the events prior to and following the plaintiff's dismissal from the Union. The paragraph does not assert à claim against the Union for unfair representation. Rather, it provides a factual basis for the balance of the complaint which continues by describing how the defendants allegedly retaliated against the plaintiff as a result of his former attorney's letter. Subsequent paragraphs state:

> 17. After defendants received a letter from Press, defendants engaged in retaliation against plaintiff.
>
> 18. Plaintiff was subject to adverse treatment in retaliation for, among other things, the statement by his counsel that he was investigating claims of unlawful discrimination.
>
> .   .   .   .   .
>
> 22. Plaintiff was treated in a disparate manner and subjected to defendants' unfair policies and practices in that plaintiff

was treated unequal and unlike similarly situated white employees.

> 23. Other managers employed by Shop Rite are union members. None of those union members were demoted because they refused to terminate their union membership.

(Complaint ¶¶ 17–23). Thus, paragraph 16 is merely factual support for the plaintiff's discrimination claim and not a cause of action.

The court's discussion in *Carrington* provides further support for the conclusion that the plaintiff does not assert a claim against the defendants based upon the plaintiff's rights under the collective bargaining agreement. In addition to the NJLAD claims, the *Carrington* plaintiff also asserted a claim of wrongful discharge. Carrington specifically alleged that his discharge violated both the collective bargaining agreement and RCA company policy, that RCA did not provide the notice required under the agreement or the policy or follow the grievance procedures. 762 F.Supp. at 635. Both *Carrington* parties conceded that this claim *was preempted* by the LMRA. *Id.* at 637. The Union maintains that Mitchell's claim is fundamentally a claim under the bargaining agreement and Mitchell's rights and the Union's duties thereunder. However, Mitchell's claim, as described *supra*, merely provides a factual foundation which references investigation of a possible unfair representation claim. Mitchell does not actually assert that claim, nor does the brief reference to a prior attorney's investigation of a potential unfair representation claim support the inference of such a claim.

## IV. CONCLUSION

The plaintiff's claim sounds firmly in the New Jersey Law Against Discrimination, N.J.S.A. 10:5–1 *et seq.* Supreme Court and third circuit jurisprudence provide that this state anti-discrimination law has not been pre-empted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Thus, the plaintiff's motion to remand the action to state court shall be granted.