Michael NAPLES, Plaintiff,

v.

NEW JERSEY SPORTS AND
EXPOSITION AUTHORITY,
Defendant.

No. CIV.A.99–5380.

United States District Court,
D. New Jersey.

June 26, 2000.

Michael I. Deutsch, Whitney Building II, East Rutherford, NJ, for Plaintiff.

Daniel A. Tabs, Grotta, Glassman, & Hoffman, Roseland, NJ, for Defendant.

## *OPINION*

WOLIN, District Judge.

This matter comes before the Court on motions of both parties. Plaintiff, Michael Naples, moves (1) to amend his Complaint pursuant to Federal Rule of Civil Procedure 15(a), in an attempt to remove all federal questions from his Complaint and (2) to remand to state court. Defendant, the New Jersey Sports & Exposition Authority, moves for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court has considered this motion on the papers pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, the Court will permit the amendment to the Complaint and remand this case to Bergen County Superior Court.

## BACKGROUND

The following facts, derived predominantly from the pleadings, are taken as true only for the purpose of deciding the motions before the Court.

Plaintiff, an employee of defendant until October 1998, claims that he was injured in an automobile accident on defendant's roadway in January 1998. (*See* Amend. Compl. ¶¶ 4, 14). After the accident, "defendant instructed the plaintiff and his family to submit all bills for medical and rehabilitative treatment through Workers' Compensation ...." (*See id.* ¶ 6). On April 23, 1998, despite defendant's alleged assurances, defendant denied plaintiff's workers' compensation claims. (*See id.* ¶ 7). Defendant then terminated plaintiff's employment in October 1998. (*See id.* ¶¶ 9, 12, 14). Plaintiff claims he was fired due to his disability.[1]

On September 8, 1999, plaintiff filed a Complaint in Bergen County Superior Court. The Complaint alleged, *inter alia*, disability discrimination in violation of the New Jersey Law Against Discrimination ("NJLAD") and a breach of a collective bargaining agreement ("CBA") which governed the parties' employment relationship.

Thereafter, on November 17, 1999, defendant removed the Complaint to this Court. Defendant claimed, in the Notice of Removal, that Count Four—breach of the CBA—served as a basis for federal jurisdiction. Specifically, defendant stated that Count Four required an interpretation of the CBA and, therefore, was completely preempted by § 301 of the Labor Management Relations Act ("LMRA").

Plaintiff now moves to amend his Complaint. In his Amended Complaint, plaintiff seeks to remove Count Four and any reference to the terms of the CBA. The proposed, multi-count, Amended Complaint alleges (1) a violation of the New Jersey Law Against Discrimination ("NJLAD") and (2) retaliation against plaintiff for filing his workers' compensation claim.[2] Pursuant to this amendment,

---

1. The Amended Complaint does not identify the disability.

2. The Amended Complaint also asserts three other claims (Counts 2, 3, and 4). The Court, however, will dismiss those claims, without prejudice, with permission to replead.

   In Count 2, plaintiff alleges that he "engaged in protective activity known to the defendant by taking medication prescribed by the defendant while performing the duties of employment ...." (Amend Compl. ¶ 22). Plaintiff claims that his discharge was "casually connected to the protected activity engaged by plaintiff." (Amend.Compl.¶ 24). In Count 3, plaintiff alleges that he

engaged in protected activity known to the defendant while receiving treatment and rehabilitation for his January 13, 1998, motor vehicle accident induced injuries.... Plaintiff was ready, willing and able to return to work .... Defendant demanded additional medical releases based upon the fabricated and baseless allegations of defendant's belief that plaintiff suffered from a new disability never indicated .... Plaintiff subjected himself to the demanded superfluous medical testing .... The adverse employment decision by defendant is casually connected to the protected activity engaged in by plaintiff.

(Amend.Compl.¶¶ 27, 29–31, 33). In Count 4, plaintiff alleges that "[d]efendant as a public

plaintiff, contends that the Amended Complaint contains no basis for federal jurisdiction. Thus, plaintiff seeks remand to the Superior Court of New Jersey, Law Division: Bergen County.

■ Defendant disagrees. Defendant argues that all counts of the Amended Complaint require the interpretation of the CBA and are, therefore, preempted by the Labor Management Relations Act. Defendant, thus, concludes that the Amended Complaint is properly within the subject matter jurisdiction of this Court.[3] Assuming the Court has jurisdiction, defendant argues that the Court should dismiss the Complaint because plaintiff failed to exhaust his administrative remedies under the CBA.

## DISCUSSION

### I. Amendment as of Right

Federal Rule of Civil Procedure 15(a) permits a plaintiff to amend his complaint "once as a matter of course at any time before a responsive pleading is served." Fed.R.Civ.P. 15(a). In the context of this case, a "responsive pleading" is an answer to the complaint. *See* 6 Charles A.· Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure, ¶ 1475 (2d ed.1990).

Here, defendant has not filed its answer. Therefore, the Court must permit plaintiff's amendment.

### II. Preemption

#### A. NJLAD

As noted above, plaintiff claims that his Amended Complaint contains no federal issues and, therefore, should be remanded to state court. Defendant, however, disagrees. Defendant claims that, even after the amendment of the Complaint, all claims are preempted by § 301 of the LMRA. In particular, defendant argues that LMRA preempts plaintiffs' New Jersey Law Against Discrimination ("NJLAD") claim.

Defendant's argument is unavailing.

The Supreme Court has held § 301 of the LMRA preempts all state law claims which depend upon the meaning of collective bargaining agreements. *See Lingle v. Norge Div. Of Magic Chef, Inc.,* 486 U.S. 399, 405–06, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988); *Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 103–04, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962). The Supreme Court explained that preemption is warranted so that a "uniform federal law" would govern

entity should have reasonably expected plaintiff to rely upon its obligation to treat the plaintiff fairly and equitable and to further rely upon defendant to make all decisions regarding the plaintiff without discrimination on the basis of factors prohibited by law including handicap." (Amend.Compl.¶ 36).

Despite the liberal pleading rules, the Court cannot discern or decipher any cause of action from these allegations, as presently pled. The Court is uncertain as to whether they arise under a state statute, federal statute, or common law. Indeed, plaintiff cites no statute, doctrine, or case law allegedly violated by defendant. Therefore, the Court will dismiss these claims, without prejudice. Moreover, because this motion hinges upon whether a cause of action implicates the interpretation of the CBA, *see infra,* dismissal of these ambiguous counts is further warranted.

3. Ordinarily, if a plaintiff has not pled a federal question on the face of his complaint, the

Court lacks federal question jurisdiction. Where a claim, however, is "completely preempted" by a federal statute, the "claim is one 'arising under' federal law and therefore within this Court's subject matter jurisdiction." *Carrington v. RCA Global Communications, Inc.,* 762 F.Supp. 632, 636 (D.N.J. 1991). Section 301 of the Labor Management Relations Act "completely" preempts "any state cause of action 'for violation of contracts between an employer and a labor organization.'" *Id.* (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). Pursuant to this exception to the well-pleaded complaint rule, defendant claims that the Court has jurisdiction.

As discussed below, however, the plaintiff's claims are not preempted by LMRA. Accordingly, the Court will remand to state court. *See infra.* ·

the interpretation of collective bargaining agreements.[4] *See Lingle,* 486 U.S. at 404, 108 S.Ct. 1877; *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 211, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). Indeed, all

> questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort.

*Id.* Thus, so long as "a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law … is pre-empted and federal labor-law principles—necessarily uniform throughout the Nation—must be employed to resolve the dispute." *Lingle,* 486 U.S. at 405–06, 108 S.Ct. 1877 (applying *Lueck,* 471 U.S. at 218, 105 S.Ct. 1904).[5]

Despite this broad rule, LMRA does not preempt "every dispute concerning employment." *Lueck,* 471 U.S. at 211, 105 S.Ct. 1904. The Supreme Court explained that, consistent with Congressional intent, LMRA does not "preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Id.* at 212, 105 S.Ct. 1904. "Only state law claims 'inextricably intertwined with considerations of the terms of the labor contract' are preempted by [LMRA]." *Carrington v. RCA Global Communications, Inc.,* 762 F.Supp. 632, 640 (D.N.J.1991) (quoting *Malia v. RCA Corp.,* 794 F.2d 909, 912 (3d Cir.1986)).

In the instant case, the Court finds that plaintiff's NJLAD disability discrimination claim is not "inextricably intertwined" with the CBA. Thus, this claim is not preempted.

In so holding, the Court relies, in part, on the well-reasoned opinions of courts in this district. Indeed, District of New Jersey courts have consistently determined that claims under the NJLAD are separate and independent from the terms of labor contracts. *See Mitchell v. Village Super Market, Inc.,* 926 F.Supp. 476, 479–81 (D.N.J.1996); *Kube v. New Penn Motor Express, Inc.,* 865 F.Supp. 221, 228–30 (D.N.J.1994); *Carrington,* 762 F.Supp. at 639–42. As such, these courts have concluded that the LMRA does not preempt NJLAD claims. *See Mitchell,* 926 F.Supp. at 479–81; *Kube,* 865 F.Supp. at 228–30; *Carrington,* 762 F.Supp. at 639–42.

For instance, in *Carrington,* the court exhaustively reviewed the pertinent case law and determined that the LMRA did not preempt NJLAD racial discrimination claims. *See Carrington,* 762 F.Supp. at 640–42. In that case, the court held that "both the existence and the scope of plaintiff's state law discrimination claims under NJLAD are derived independently from state law, and not from the obligations assumed by the parties under the labor agreement." *Id.* at 641; *see also Mitchell,* 926 F.Supp. at 480 ("[T]he right not to be discriminated against is defined and enforced under state law without reference to the terms of any collective bargaining agreement even where the labor contract

---

4. The Supreme Court reasoned that LMRA requires this "uniform federal interpretation." *Id.* at 404 n. 3, 108 S.Ct. 1877 (citing *Lucas Flour Co.,* 369 U.S. at 103–04, 82 S.Ct. 571), because the "substantive principles of federal labor law must be paramount in the area covered by the statute." *Lucas Flour Co.,* 369 U.S. at 103–04, 82 S.Ct. 571. The "possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements." *Id.*

5. *See also Angst v. Mack Trucks, Inc.,* 969 F.2d 1530, 1536 (3d Cir.1992) ("[T]he Supreme Court has held that federal law preempts state law if the resolution of a state-law claim depends upon the meaning of a collective bargaining agreement, or if the claims proffered by the plaintiffs substantially depend upon analysis of the terms of an agreement made between parties in a labor contract." (citations and internal quotation marks omitted)).

itself prohibits discrimination." (internal quotations omitted)).

In *Kube*, a case closely analogous to the instant case, the court held that LMRA did not preempt a NJLAD disability discrimination claim. Similar to *Carrington*, the court found that the adjudication of plaintiff's disability discrimination claim required no consultation to the pertinent collective bargaining agreement. The court opined:

> the New Jersey Supreme Court, relying on the New Jersey Administrative Code, has determined that an employer's decision to terminate a handicapped employee because of his handicap requires "an objective standard supported by factual or scientifically validated evidence, rather than ... general assumptions that a particular handicap would create a hazard" to the employee or to others.... Consequently, the outcome of plaintiff's discrimination claim will depend on the actual events which transpired between plaintiff and defendant, and not on the meaning of any provision of the collective bargaining agreement.

*Id.* at 228–29 (quoting *Jansen*, 110 N.J. at 378, 541 A.2d 682).

Here, like in *Carrington* and *Kobe*, plaintiff's NJLAD claim requires no interpretation of the CBA. Rather, to determine whether defendant violated the NJLAD, the ultimate decision maker must ascertain whether the plaintiff has proven a prima facie case of discriminatory discharge. To do this, plaintiff must prove: (1) that he was [handicapped within the meaning of the law], (2) that he was performing his job at a level that met his employer's legitimate expectations [and that the handicap did not unreasonably hinder his job performance], (3) that he nevertheless was fired, and (4) that the [employer] sought someone to perform the same work after he left. *Jansen v. Food Circus Supermarkets, Inc.*, 110 N.J. 363, 382, 541 A.2d 682 (1988); *see also Maher v. New Jersey Transit Rail Operations, Inc.*, 125 N.J. 455, 480–81, 593 A.2d 750 (1991). Upon the examination of these four elements, the Court finds that the CBA has no connection to plaintiff's NJLAD claim. Indeed, plaintiff's claim is completely independent because it "is neither the source of the plaintiff's claim, nor a document that needs to be consulted to resolve plaintiff's cause of action." *Kube*, 865 F.Supp. at 228.

Defendant does not dispute that the CBA is unrelated to elements 1, 3, and 4 of a prima facie case. Defendant appears to argue, however, that the resolution of the NJLAD claim requires the application of the CBA to the second element—i.e., whether plaintiff performed his job at a level that met his employer's expectations. In making this argument, defendant points to a provision in the CBA which gives it the right to take disciplinary action against employees for "just cause." (Tabs. Exh. A, CBA Art. 13).

Many courts have addressed and rejected this precise argument. In *Lingle*, the Supreme Court refused to preempt the plaintiff's claim even though the collective bargaining agreement contained a similar "just cause" provision. *See Lingle*, 486 U.S. at 408–09, 108 S.Ct. 1877. The Court reasoned that "state-law analysis might well involve attention to the same factual considerations as the contractual determination of whether [the plaintiff] was fired for just cause, ... [but] such parallelism [does not] render the state law analysis dependent on the contractual analysis." *Id.* at 408, 108 S.Ct. 1877. "[A]s long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Id.* at 410, 108 S.Ct. 1877. "For even if an arbitrator should conclude that the contract does not prohibit a particular discriminatory or retaliatory discharge, that conclusion might or might not be consistent with a proper interpretation of state law." *Id.* at 413, 108 S.Ct. 1877. As such, the Court concluded that "in the typical case a state

tribunal could resolve ... a discriminatory ... discharge claim without interpreting the 'just cause' language of a collective-bargaining agreement." *Id.* at 413, 108 S.Ct. 1877; *see also Mitchell*, 926 F.Supp. at 480; *Carrington*, 762 F.Supp. at 640–41; *Lepore v. National Tool & Mfr. Co.*, 224 N.J.Super. 463, 477, 540 A.2d 1296 (App. Div.1988).

Following *Lingle* and its progeny, the Court finds that plaintiff's NJLAD claim can be resolved without reference to the "just-cause" provision. Although the analysis may "require addressing precisely the same set of facts, ... the claim is 'independent' of the [CBA] for [LMRA] purposes." *Carrington*, 762 F.Supp. at 641. Indeed, the ultimate decision maker can certainly determine the second element of the prima facie case—whether plaintiff met defendant's legitimate expectations—without consulting the CBA's "just-cause" provision.[6]

■ Defendant also argues for preemption because the CBA prescribes a "mandatory grievance and arbitration process." (Def. Opp. Br. at 8). Stated differently, defendant suggests that the grievance/arbitration procedure supplants all of plaintiff's claims, including independent state law claims.

Contrary to defendant's argument, a grievance/arbitration provision, by itself, cannot preempt independent state law claims, such as plaintiff's NJLAD claim. If it did, parties to a labor contract would possess the power to avoid all such claims simply by including a mandatory grievance provision in their collective bargaining agreement. Without question, such a result is untenable and contravenes controlling precedent. As the *Lueck* Court held:

> Of course, not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law.... [There is no] suggestion that Congress, in adopting § 301, wished to give the substantive provisions of private agreements the force of federal law, ousting any inconsistent state regulation. Such a rule would delegate to unions and unionized employers the power to exempt themselves from whatever state labor standards they disfavored. Clearly, [LMRA] does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law.

*Lueck*, 471 U.S. at 211–12, 105 S.Ct. 1904.

Following the rationale of *Lueck*, the Court finds that LMRA does not grant parties to a collective bargaining agreement the ability to avoid independent state law discrimination claims. "[N]otwithstanding the strong policies encouraging arbitration, different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers." *Id.* at 212, 105 S.Ct. 1904 (internal quotations omitted). In fact, "Congress expressly contemplated that the states would exercise their tradi-

---

**6.** Defendant cites to an unpublished slip opinion issued by the New Jersey Appellate Division, *Waldron v. AT & T*, A–6366–94T5 (App. Div. Mar. 10, 1997) which contradicts the above cited case law. In *Waldron*, the court found that LMRA preempted a NJLAD claim due to the collective bargaining agreement's "just cause" provision. *See id.* at *9.

*Waldron* is unpersuasive. It fails to consider the voluminous case law to the contrary. As noted above, both the Supreme Court and the courts in this district have found that LMRA does not preempt NJLAD claims. Accordingly, this case holds no weight.

Defendant also cites to *Maher v. New Jersey Transit Rail Operations*, 125 N.J. 455, 593 A.2d 750. *Maher*, however, is inapposite. *Maher* was decided pursuant to the Railway Labor Act, not LMRA. Under the Railway Labor Act, courts engage in a different analysis than under LMRA. *Maher*, in fact, acknowledged that LMRA has " 'less preemptive force' than the Railway Labor Act." *Id.* at 472–73, 593 A.2d 750 (quoting *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652–53, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965)).

tional regulatory powers to prohibit employment discrimination." *United States v. City of Philadelphia,* 798 F.2d 81, 86 n. 5 (3d Cir.1986). New Jersey has exercised that power in enacting the NJLAD. Hence, because the independent state rights guaranteed under NJLAD are not "inextricably intertwined" with the grievance/arbitration provision or any CBA provision, preemption is unwarranted.[7]

## B. Retaliatory Discharge

 Defendant also argues that the LMRA preempts plaintiff's claim of retaliatory discharge for collecting workers' compensation. Again, defendant's argument is without merit.

In *Lingle,* the Supreme Court found that an Illinois state law tort of retaliatory discharge for filing a workers' compensation claim was not preempted by LMRA. *Lingle,* 486 U.S. at 407, 108 S.Ct. 1877. The Court reasoned that the elements of the tort were "purely factual questions pertain[ing] to the conduct of the employee and the conduct and motivation of the employer." *Id.* Accordingly, the Court found preemption unwarranted because no element or defense required the interpretation of the collective bargaining agreement. *Id.*

Following *Lingle,* a court in this district held:

> The elements of a claim for retaliatory discharge for collecting workers' compensation benefits under New Jersey law closely mirror the elements required under the Illinois tort discussed in *Lingle.* Thus, resolution of the retaliatory discharge claim under New Jersey law would require a purely factual inquiry which does not depend upon the meaning of any terms in the collective bargaining agreement.

**7.** Even if a grievance/arbitration provision could preempt state law discrimination claims, preemption would still be unwarranted in this case. The plain language of the provision does not encompass state law claims. The grievance procedure only "cov-

*Kube,* 865 F.Supp. at 230–31 (citing *Lingle,* 486 U.S. at 407, 108 S.Ct. 1877). Accordingly, the court found preemption unwarranted. *See id.* at 231.

This Court agrees with its sister court. Hence, plaintiff's New Jersey statutory claim of retaliatory discharge implicates no provision of the CBA. As a result, plaintiff's claim is not preempted.

## CONCLUSION

Because LMRA does not preempt plaintiff's complaint, the Court lacks subject matter jurisdiction. Indeed, no federal claims are present on the face of the complaint. Accordingly, the Court will remand this case to the Bergen County Superior Court.

While the Amended Complaint contains no basis for federal jurisdiction, if, in the future, plaintiff asserts any claim which requires interpretation of the collective bargaining agreement, his claim will likely state a federal question. At that time, the defendant may, again, remove the complaint pursuant to 28 U.S.C. § 1331. Until then, the Court lacks the power to adjudicate this dispute.

---

er[s] issues of application or interpretation of this Agreement." (Tabs Exh. A, CBA, Art. 15). As explored above, the NJLAD claim falls outside the application and interpretation of the CBA. Indeed, the claim turns on an interpretation of state law, not the CBA.